480 So.2d 855 (1985)
Helen TAPIA, Plaintiff-Appellant,
v.
Robert HAM et al., Defendants-Appellees.
Phyllis BENZINGER, Plaintiff-Appellant,
v.
Robert HAM et al., Defendants-Appellees.
Nos. 17353-CA, 17354-CA.
Court of Appeal of Louisiana, Second Circuit.
December 4, 1985.
Rehearing Denied January 10, 1986.
Writ Denied March 14, 1986.
*857 Brown, Williams & Tucker by Jack A. Williams, Shreveport, for plaintiff-appellant Helen Tapia.
Donald R. Miller, A.P.L.C., Shreveport, for plaintiff-appellant Phyllis Benzinger.
Mayer, Smith & Roberts by Walter O. Hunter, Jr., Shreveport, for defendants-appellants, Ford Motor Co. and Liberty Mut. Ins. Co.
Lunn, Irion, Johnson, Salley & Carlisle by James B. Gardner, Shreveport, for defendants-appellees and third party plaintiffs Wray Ford, Inc.
Smitherman, Lunn, Chastain & Hill by W. James Hill, III, Shreveport, for defendants-appellees and third party plaintiffs Equipment Lessors, Inc. and Wray Ford, Inc.
Before MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.
FRED W. JONES, Jr., Judge.
Phyllis Benzinger rented a car from Wray Ford, Inc. ("Wray"), a franchise dealership of Ford Motor Company ("Ford"). Accompanied by Helen Tapia as a passenger, Mrs. Benzinger was driving the rental vehicle in Caddo Parish when it was rearended by an automobile operated by Robert Ham, an uninsured motorist. Both occupants of the rental car sustained serious injuries.
In separate actions, now consolidated, Mrs. Benzinger and Mrs. Tapia sued Ham, Wray, Ford, Liberty Mutual Insurance Company (Ford's alleged UM carrier), and Equipment Lessors, Inc. (a paper corporation owned by shareholders of Wray and nominal owner of the rental car).
The trial court concluded that: (1) Ham was the sole cause of the accident; (2) there was a principal-agent relationship between Ford and Wray which rendered Ford, under the rental agreement executed by its agent, responsible to the lessee for carrying UM insurance; (3) since Ford had properly rejected UM coverage under its policy with Liberty Mutual, the latter was not liable to plaintiffs; (4) Ford, together with Ham, was liable to plaintiffs for their damages, with judgments accordingly rendered in favor of Mrs. Benzinger for $187,402.28 and in favor of Mrs. Tapia for $234,523.46.
Plaintiffs appealed, seeking an increase in their awards. They further contended the trial judge erred in failing to find UM coverage on the rental car. Ford and Wray answered the appeals, the latter both as a defendant and as third party plaintiff against Ford.
Issues posed by these appeals and answers thereto are:
(1) What was the legal nature of the relationship between Ford and Wray on *858 one hand and that between Wray and Mrs. Benzinger on the other hand?
(2) Was Ford's rent-a-car system agreement with Wray, with its commitment to provide insurance coverage on rental cars, a stipulation pour autrui in favor of the car lessees?
(3) Was Ford's rejection of UM coverage under its policy with Liberty Mutual valid?
(4) Did the trial court err in its assessment of damages?
(5) Should penalties and attorney fees have been awarded under La.R.S. 22:658?

Relationship between Ford and Wray and between Wray and Mrs. Benzinger
According to evidence presented at the trial, Wray's participation in Ford's rental car program involved Ford sending vehicles to Wray under a manufacturer's certificate of origin. Wray then conveyed the vehicles to Equipment Lessors, Inc., which executed a chattel mortgage in favor of Ford to secure the purchase price. Wray proceeded to offer these vehicles for rent, using forms supplied by Ford which prominently featured Wray as a member of Ford's renta-car system.
The rental agreements clearly indicated that Wray (not Ford) was the lessor and the car renters the lessees. Title to the vehicle in question was in Equipment Lessors, Inc. (Wray), not Ford. Mrs. Benzinger dealt with Wray, not Ford, in renting the car. Consequently, we conclude that the trial judge erred in finding a principalagent relationship existed between Ford and Wray by virtue of the rent-a-car system agreement. Conversely, the contract between Wray and Mrs. Benzinger was a car rental agreement between lessor and lessee.
That rent contract, which characterized Wray as "licensee" and Mrs. Benzinger as "customer", provided in part:
"Licensee provides insurance coverage for ... (the customer) ... in accordance with the standard provisions of an automobile liability insurance policy with limits of $100,000 for injury or death of any one person, $300,000 for injuries or death in any one accident ..."
A premium for this coverage was included in the monthly rental charge.
The object of the Louisiana UM statute is to promote full recovery of damages by innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the negligent motorist is without insurance. The statute is to be liberally construed to carry out this objective. Hoefly v. Government Employees Insurance Co., 418 So.2d 575 (La.1982).
In Louisiana a standard automobile liability policy would include the statutorily required UM coverage in an amount equal to liability coverage, unless the UM provision was expressly rejected by the insured. La.R.S. 22:1406(D)(1)(a).
In Mrs. Benzinger's dealings with Wray on the car rental there was no discussion of rejecting UM coverage. Therefore, we find that Wray was obligated under its rental contract to provide for Mrs. Benzinger's benefit (and also car passengers) UM coverage equal to the $100,000/300,000 liability coverage. Ashline v. Simon, 466 So.2d 622 (La.App. 5th Cir.1985). Therefore, the trial court should have entered judgment in favor of each plaintiff against Wray for $100,000, the coverage it was obligated under the rental agreement to provide.

Ford's Liability
The Rent-A-Car System agreement between Ford and Wray provided in part:
"Each vehicle rented by Licensee ... shall be covered by insurance protecting, as their interest may appear, the daily rental customer, the Licensee ... in at least the following amounts:
(c) Automobile liability insurance with limits of not less than:
(i) $100,000 for any one person, for bodily injury and death

*859 (ii) $300,000 for any one accident, for bodily injury and death ..."
Pursuant thereto, Ford purchased an insurance policy from Liberty Mutual, but during the term of that policy rejected UM coverage by letter to the insurance company. We agree with the trial judge that this was a valid rejection of UM coverage.
Plaintiffs argue that Ford's insurance manager did not have authority to reject UM coverage because a corporate resolution had not been passed. This argument is without merit. When a corporation is insured and wishes to reject UM coverage, an authorized agent may execute the rejection form. Rainey v. Gerarve, 461 So.2d 464 (La.App. 5th Cir.1984); Johnson v. Ortego, 408 So.2d 397 (La.App. 1st Cir. 1981); Jordan v. Honea, 407 So.2d 503 (La.App. 1st Cir.1981).
The fact that the rejection letter was sent after the policy took effect is inconsequential in this case. No injured party had accrued any rights prior to the written rejection. See Cooper v. Barnes, 408 So.2d 378 (La.App. 1st Cir.1981).
The trial judge did not err in rejecting the claims against Liberty Mutual.
However, the valid rejection of UM coverage affected neither Wray's obligation to furnish UM coverage under the car rental agreement nor Ford's obligation under the express provisions of the Rent-A-Car System agreement. Furthermore, in addition to the base liability coverage, Ford agreed to secure a $1 million excess liability policy under the following clause of the Rent-A-Car System contract:
"Company shall provide ... additional liability insurance of $1 million in excess of (these) limits ... All ... insurance shall protect the Company (Ford), Licensee (Wray) ... and any person ... renting or driving the vehicle."
The agreement in question indicates that Ford is the "company".
UM coverage is to be determined not only by the provisions of the contract but also by applicable statutes. AIU Insurance Co. v. Roberts, 404 So.2d 948 (La. 1981). Excess automobile liability insurance, or umbrella liability coverage as it is sometimes called, also includes the statutorily required UM coverage in an equal amount unless UM coverage is expressly rejected by the insured. Southern American Insurance Company v. Dobson, 441 So.2d 1185 (La.1983); Capone v. King, 467 So.2d 574 (La.App. 5th Cir.1985). This record shows that Ford purchased the base liability limits ($100,000/$300,000) and rejected UM coverage. The record does not show that Ford purchased the $1 million excess liability coverage.
Construing this explicit and unconditional language in the Rent-A-Car System agreement, we hold that the obligation to provide excess liability coverage existed to protect, or to benefit, not only Ford and Wray, but the lessee of the automobile. Benzinger and her passenger would be third party beneficiaries of any excess liability policy that Ford might have purchased to fulfill its obligation. La.C.C. Art. 1978. As we have said, from this record we cannot determine that any policy was purchased.
Under the language of the Ford-Wray contract, Ford cannot escape its express obligation to provide $1 million excess liability coverage that would protect or benefit one who leases a car from its licensee. Therefore, Benzinger and Tapia are entitled to judgment against Ford for the full amount of their respective damages.
On the other hand, because of Ford's contractual commitment to Wray to secure the UM coverage for the rental car, Wray is entitled to judgment on its third party demand against Ford for any sums it may have to pay plaintiffs under our judgment herein.

Quantum
Mrs. Benzinger was 47 years old. Her injuries included broken legs, toes and ribs, a concussion, and numerous lacerations and contusions. She was hospitalized for 20 days and then spent three months *860 confined to bed. She was awarded $180,000 in general and $7,402.28 in special damages.
Mrs. Tapia was a 34 year old store clerk. Her injuries included a lacerated scalp, contusions of her right lung, a ruptured spleen and a lacerated liver and right arm. She also had a fracture of the left leg and elbow. The leg became infected and the prognosis was she may lose her leg. She was awarded $205,000 in general damages, $14,523.46 in special damages, as well as $15,000 for loss of earning capacity.
We find no abuse of trial court discretion in these awards.

Penalties and Attorney Fees
Refusal to award penalties and attorney's fees was justified. Penalties are authorized only with an improper denial of coverage. La.R.S. 22:658. There was no arbitrary or capricious failure to pay on the part of defendants, since that failure was based on substantial issues.

Decree
For the reasons stated above, the judgments of the district court are recast as follows:
"IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Plaintiff, PHYLLIS BENZINGER, and against the Defendants, ROBERT HAM and FORD MOTOR COMPANY, in solido, in the amount of ONE HUNDRED EIGHTY-SEVEN THOUSAND, FOUR HUNDRED TWO & 28/100 ($187,402.28) DOLLARS, together with legal interest from the date of judicial demand until paid, and for all costs of this suit.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Plaintiff, HELEN TAPIA, and against Defendants, ROBERT HAM and FORD MOTOR COMPANY, in solido, for TWO HUNDRED THIRTY-FOUR THOUSAND, FIVE HUNDRED TWENTY-THREE & 46/100 ($234,523.46) DOLLARS, together with legal interest from the date of judicial demand until paid, and for all costs of these proceedings.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Plaintiffs, PHYLLIS BENZINGER and HELEN TAPIA, and against Defendant, WRAY FORD, INC., in solido with ROBERT HAM and FORD MOTOR COMPANY for the first ONE HUNDRED THOUSAND ($100,000) DOLLARS each of the above awards, together with legal interest from the date of judicial demand until paid.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Third Party Plaintiff, WRAY FORD, INC., against Third Party Defendant, FORD MOTOR COMPANY, for all amounts it pays plaintiffs.
"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all other demands of all parties are rejected."
As amended, the judgments are affirmed. Costs of the appeal are assessed to Ford Motor Company.