liAMY, Judge.
This writ application concerns the uninsured/underinsured motorist [UM] provisions in a policy of automobile insurance that Prudential Property & Life Casualty Insurance Company [Prudential] issued to Kenneth A. Doggett, Sr. [Doggett]. The issue is whether the trial court properly denied Prudential’s motion for summary judgment. For the reasons which follow, we reverse the trial court’s judgment and render summary judgment in favor of Prudential.
DISCUSSION OF THE RECORD
On April 17, 1994, plaintiff, Jennifer L. Armand [Armand], was a passenger in her 1991 Mitsubishi automobile being driven by Doggett, who was proceeding north on Highway 114 in Avoyelles Parish, Louisiana. At the same time, Christopher B. Rhodes [Rhodes] was also traveling north on Highway 114 in a 1979 Dodge truck registered in the name of Ellis Laviege. Rhodes stopped the truck and attempted to make a left turn onto Humphries Loop. An accident happened when Doggett 12attempted to pass the Dodge truck as Rhodes was beginning his left turn. The impact of the accident caused the 1991 Mitsubishi automobile to flip over into a ditch along the north side of Highway 114.
On April 13, 1995, Armand filed suit against Christopher B. Rhodes, Kenneth A. Doggett, Sr., his insurer, Prudential, and Shelter Mutual Insurance Company.[1] Armand alleged that Rhodes and Doggett were both at fault for the accident. Amand sought recovery from Prudential, in its capacity as general liability insurer of Dog-gett.[2] Aso, relevant to this writ application, Amand requested recovery of UM benefits pursuant to the terms and provisions of the policy issued by Prudential. Prudential answered Amand’s suit and denied liability, asserting that there was not UM coverage in its policy for the particular claims advanced by Amand.
Subsequently, Prudential filed a motion for summary judgment alleging that Amand was not an insured under the terms and provisions of the policy it issued to Doggett. Further, Prudential argued that since A-mand was in her own automobile at the time of the accident, she was precluded from seeking benefits pursuant to La.R.S. 22:1406 D(l)(e).[3] Armand did not file any written *548 opposition to Prudential’s Rmotion. However, at the hearing on the motion for summary judgment on December 12, 1995, Armand’s attorney argued that, under Prudential’s UM policy, if Doggett was in a nonowned automobile being used with the permission of the owner for the purpose intended by the owner, then Doggett would have the same coverage on the non-owned vehicle as he would have on one of his vehicles specifically listed in his policy. Therefore, according to Armand’s attorney, she was covered by Dog-gett’s UM policy. On December 22, 1995, the trial court denied Prudential’s motion for summary judgment.
Prudential then filed a writ application with this Court. However, in writ 96-15 (La.App. 3 Cir. 12/27/96), we denied Prudential’s writ application. In response, Prudential filed a writ application to the Louisiana Supreme Court. On May 3, 1996, the supreme court granted Prudential’s writ application and stated that the writ was: “Granted and remanded to the court of appeal for briefing, docketing and opinion.” Armand v. Rhodes, 96-0777 (La.5/3/96); 672 So.2d 697, 698.
On remand, Prudential asserts that the trial court erred in denying its motion for summary judgment because Jennifer Armand was not an “insured” under its policy since she was not listed as a named insured under its policy, nor was she a relative or resident of the named insured’s household, nor was she occupying a vehicle listed under the policy. Prudential also argues that the trial court erred in denying its motion for summary judgment because Armand was precluded from seeking UM benefits pursuant to La.R.S. 22:1406 D(l)(e) since she "was in her own | ¿vehicle at the time of the accident and the vehicle was not listed in Dog-gett’s insurance policy.
LAW
SUMMARY JUDGMENT
An appellate court reviews a summary judgment de novo using the same criteria that governs the trial court’s consideration of whether summary judgment is appropriate. Potter v. First Fed. Sav. and Loan Ass’n of Scotlandville, 615 So.2d 318 (La.1993). Summary judgment may be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966.[4] The summary judgment procedure should be used cautiously and sparingly, and any reasonable doubt should be resolved against the mover in favor of a full trial on the merits. Dauzat v. Hartford Ins. Co. of The Midwest, 95-50 (La.App. 3 Cir. 5/3/95); 657 So.2d 188. However, summary judgment is designed to bring a matter to a head prior to an expensive and protracted trial, and to put an end to litigation in which a party has no chance of prevailing. Burris v. Vinet, 95-668 (La.App. 1 Cir. 11/9/95); 664 So.2d 1225; Whatley v. Caddo Parish Sheriff's Dep’t, 27,321 (La.App. 2 Cir. 9/27/95); 661 So.2d 557, writ denied, 95-2842 (La.2/2/96); 666 So.2d 1097. A dispute as to whether, as a matter of law, language in an insurance policy provides coverage may be resolved |5on a motion for summary judgment. Natchitoches Parish Hosp. Serv. List. v. Radial, 94-995 (La.App. 3 Cir. 2/1/95); 649 So.2d 1152, writ denied, 95-528 (La.4/7/95); 652 So.2d 1349; Domingue v. Reliance Ins. Co., 619 So.2d 1220 (La.App. 3 Cir.1993).
In Smith v. Our Lady Of The Lake Hosp., Inc., 93-2512 (La.7/5/94); 639 So.2d 730, 752, the Louisiana Supreme Court discussed the *549 burden of proof in a motion for summary judgment:
Procedurally, the court’s first task oh a motion for summary judgment is determining whether the moving party’s supporting documents — pleadings, depositions, answers to interrogatories, admissions and affidavits — are sufficient to resolve all material factual issues. LSA-C.C.P. Art. 966(B); Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). “To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact.” Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Co., 427 So.2d 1152, 1154 (La.1983). In making this determination, the mover’s supporting documents must be closely scrutinized and the non-mover’s indulgently treated. Vermilion Corp. v. Vaughn, 397 So.2d 490, 493 (La.1981). Since the moving party bears the burden of proving the lack of a material issue of fact, inferences to be drawn from the underlying facts before the court must be viewed in light most favorable to the non-moving party. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991); Vermilion, 397 So.2d at 493; Pace [v. Zilka], 484 So.2d [771], 773 [(La.App. 1 Cir.), writ denied, 488 So.2d 691 (La.1986)].
If the court determines that the moving party has met this onerous burden, the burden shifts to the non-moving party to present evidence demonstrating that material factual issues remain. Sanders, supra. LSA-C.C.P. Art. 967 outlines the non-moving party’s burden of production as follows:
When a motion for summary judgment is made and supported ... an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
RUM COVERAGE
In Louisiana, the issuance of UM insurance is governed by La.R.S. 22:1406, which provides in part:
No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subsection unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom; however, the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing, as provided herein, the coverage or selects lower limits. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900. Such coverage need not be provided in or supplemental to a renewal, reinstatement, or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer or any of its affiliates. The coverage provided under this Subsection may exclude coverage for punitive or exemplary damages by the terms of the policy or contract.
The purpose of UM coverage was discussed by the Louisiana Supreme Court in Jones v. Henry, 542 So.2d 507, 508 (La.1989):
Under the terms of R.S. 22:1406(D), automobile liability insurance delivered or issued for delivery in Louisiana and arising out of ownership, maintenance, or use of a motor vehicle registered in Louisiana and designed for use on public highways must *550 provide uninsured/underinsured motorist (UM) coverage equal to the liability provided for bodily injury. The purpose of this statute is to protect insureds who become the innocent victims of uninsured/underin-sured motorists’ negligence. Uninsured motorist coverage is intended to protect the insured at all times against the generalized risk of damages at the hands of uninsured motorists. The statute as amended indicates that the legislature intended to provide a full recovery for innocent accident victims by making their UM coverage the primary coverage when the tortfeasors are uninsured, (citations omitted.)
|7There is a strong public policy in favor of UM coverage, Perkins v. Guaranty Nat’l Ins. Co., 95-229 (La.App. 3 Cir. 11/2/95); 667 So.2d 559, writ denied, 96-759 (La.5/31/96); 673 So.2d 1033, therefore, the UM statute is to be liberally construed, Banks v. Patterson Ins. Co., 94-1176 (La.App. 1 Cir. 9/14/95); 664 So.2d 127, writ denied, 95-2951 (La.2/16/96); 667 So.2d 1052.
A plaintiff has to be an “insured” under the insurance policy to recover under UM coverage. See Seaton v. Kelly, 339 So.2d 731 (La.1976); Earles v. Inchausti, 95-269 (La.App. 5 Cir. 5/10/95); 656 So.2d 1048; Guedry v. Fromenthal, 633 So.2d 287 (La.App. 1 Cir.1993); Zanca v. Breaux, 590 So.2d 821 (La.App. 4 Cir.1991); Haltom v. State Farm Mut. Auto. Ins. Co., 588 So.2d 792 (La.App. 2 Cir.1991); Barnes v. Thames, 578 So.2d 1155 (La.App. 1 Cir.1991); Plaisance v. Fogg, 568 So.2d 1119 (La.App. 3 Cir.1990), writ denied, 572 So.2d 63 (La.1991); Futch v. Commercial Union Ins. Co., 568 So.2d 588 (La.App. 4 Cir.1990); Pridgen v. Jones, 556 So.2d 945 (La.App. 3 Cir.1990); Saffel v. Bamburg, 540 So.2d 988 (La.App. 2 Cir.), writ denied, 542 So.2d 1380 (La.1989). In the present case, Armand is attempting to recover UM benefits from a policy that Prudential issued to Doggett. Therefore, we must ascertain whether Armand is an “insured” under the particular language of this policy.
Judicial responsibility in interpreting insurance contracts is to determine the parties’ common intent. La.Civ.Code art. 2045; Louisiana Ins. Guar. Ass’n v. Interstate Fire & Casualty Co., 93-911 (La. 1/14/94); 630 So.2d 759. “The parties’ intent, as reflected in the words of the insurance policy, determines the extent of coverage.” Valentine v. Bonneville Ins. Co., 28,109 (La.App. 2 Cir. 4/8/96); 672 So.2d 461, 463. Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning unless the words have |8acquired a technical meaning. La.Civ.Code art. 2047; Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94); 634 So.2d 1180; Keathley v. State Farm Fire & Casualty Ins. Co., 594 So.2d 963 (La.App. 3 Cir.1992). An insurance policy is construed as a whole, and one part of the contract cannot be construed separately at the expense of disregarding another section of the contract. Crabtree v. State Farm Ins. Co., 93-509 (La.2/28/94); 632 So.2d 736; Central Louisiana Elec. Co., Inc. v. Westinghouse Electric Corporation, 579 So.2d 981 (La.1991). If the language in the insurance contract is clear and unambiguous, the court must enforce the contract as written. La.Civ.Code art. 2046; Smith v. Matthews, 611 So.2d 1377 (La.1993). Any ambiguity in an insurance contract must be construed against the insurer and in favor of coverage. La.Civ.Code art. 2057; Garcia v. St. Bernard Parish School Board, 576 So.2d 975 (La.1991); Capital Bank & Trust Co. v. The Equitable Life Assurance Soc’y Of The United States, 542 So.2d 494 (La.1989). Ambiguity in an insurance contract will be resolved by ascertaining how a reasonable policy purchaser would construe the clause at the time the contract was entered into by the parties. Gleason v. State Farm Mut. Auto. Ins. Co., 27,297 (La.App. 2 Cir. 8/23/95); 660 So.2d 137, writ denied, 95-2358 (La.12/15/95); 664 So.2d 454; Smith v. Perkins, 94-1270, 94-1271 (La.App. 4 Cir. 12/28/94); 648 So.2d 482, writ denied, 95-267 (La.3/24/95); 651 So.2d 292.
19In the case before us, Prudential attached to its motion for summary judgment [5] a certified copy of the insurance policy *551 that it issued to Doggett. . Kenneth Doggett was the named insured under the policy and Debra G. Doggett, his wife at the time of the accident, was listed as a licensed driver residing in his household. Two automobiles were listed as “covered” in the policy: (1) 1993 Chevrolet Corvette and (2) 1989 Cadillac Deville. Doggett had agreed to pay premiums for the following coverage: (1) Bodiiy injury, for each person, $100,000.00, and each accident, $300,000.00; (2) Property damage, each accident, $50,000.00'; (3) Medical payments, each person, $5,000.00; and (4) Uninsured Motorists-Bodily injury, each person, $100,000.00, and each accident, $300,-000.00.
Part 4 of Prudential’s insurance contract, which contains the language relevant to the present case, states in part:
OUR OBLIGATIONS TO YOU (PART 4)
UNINSURED AND UNDERINSURED MOTORISTS COVERAGE-BODILY INJURY
UNINSURED AND UNDERINSURED MOTORISTS COVERAGE-PROPERTY DAMAGE
If you have these coverages (see the Declarations), we will pay up to our limit of liability for bodily injury or property damage that is covered under this part when an insured (whether or not occupying a car) is struck by an uninsured or under-insured motor vehicle. Our payment is based on the amount that an insured is legally entitled to recover for bodily injury or property damage but could not collect lipfrom the owner or driver of the uninsured or underinsured motor vehicle because....
* * * *
WHAT CARS ARE COVERED (PART 4)
* * * *
OTHER NON-OWNED CARS
In addition to SUBSTITUTE CARS, we will cover a non-owned car. The owner must give permission to use it. The non-owned car must be used in the way intended by the owner. This includes a rented car for a period of up to 30 consecutive days. The non-owned car has the same coverage as any one of your cars insured with us.
WHO IS INSURED (PART 4)
IN YOUR CAR (INCLUDES A SUBSTITUTE CAR)
You and a resident relative are insured while using your car or a substitute car covered under this part.
Other people are insured while using your car or a substitute car covered under this part if you give them permission to use it. They must use the car in the way you intended.
IN A NON-OWNED CAR
You and a resident relative are insured while using a non-owned car. The owner must give permission to use it. It must be used in the way intended by the owner, (emphasis in original.)
“You or Your” is defined in the policy as “the person shown as the named insured on the Declarations of this policy, and your spouse, if he or she lives in your household.” (emphasis omitted.) A “resident relative” is defined in the policy as “someone who lives in your household and is related to you by blood, marriage, adoption or is a ward or foster child.” (emphasis omitted.)
After a thorough consideration of the plaintiffs arguments, we conclude that the insurance policy is not ambiguous. Prudential’s policy does include UM coverage for a non-owned car. However, the policy limits recovery to certain people | nspecified in the contract: (1) the insured named in the policy *552 [Kenneth A. Doggett, Sr.] and his spouse [Debra Doggett] at that time if she was living in his household; and (2) a resident relative [someone who lived in Doggett’s household and was related to him by blood, marriage, adoption or was a ward or foster child].[6] At the time of the accident, Jennifer Armand was not married to Kenneth A. Doggett, Sr., nor was she listed as an “insured” in his policy, nor was she a resident relative.
Absent conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose or to enforce reasonable conditions upon policy obligations they contractually assume. See Pareti v. Sentry Indem. Co., 536 So.2d 417 (La.1988); St. Paul Fire & Marine Ins. Co. v. Valentine, 95-649 (La.App. 1 Cir. 11/9/95); 665 So.2d 43, writ denied, 95-2961 (La.2/9/96); 667 So.2d 534; Gleason, 660 So.2d 137; Reichert v. Bertucci, 94-1445 (La.App. 4 Cir. 1/31/95); 650 So.2d 821; Hebert v. Hartford Ins. Co. of The Midwest, 94-316 (La.App. 3 Cir. 11/2/94); 649 So.2d 631. In Parker v. American Guar. & Liab. Ins. Co., 93-1556 (La.App. 1 Cir. 5/20/94); 637 So.2d 788, 791, the first circuit stated:
The insurer is not required to provide blanket coverage for all non-owned motor vehicles the insured may drive, and may reasonably limit coverage for non-owned vehicles without violating public policy. Gunn v. Automotive Cas. Ins. Co., 614 So.2d 154, 157-158 (La.App. 3rd Cir.1993).
We find that Prudential reasonably limited its UM coverage, with respect to certain individuals, for non-owned cars and that its reasonable limitation does not violate public policy. Further, we conclude that, under the provisions of Prudential’s insurance policy, Jennifer Armand was not an “insured.”
|i2We therefore conclude that Prudential met its burden of proving that it was entitled to a summary judgment as a matter of law because its policy did not extend UM coverage to Jennifer Armand under the facts of this case. The burden of proof then shifted to Armand to prove that there was a triable issue of fact with respect to UM coverage. As previously stated, Armand did not file a written opposition to Prudential’s motion for summary judgment. Given our conclusions regarding the meaning of the policy, Armand has failed to set forth specific facts showing that there are any genuine issues of material fact in dispute that can be submitted for trial with respect to whether Prudential’s policy provides UM coverage to Armand. Thus, Armand has failed to show that Prudential is not entitled to summary judgment.
Accordingly, we conclude that the trial court’s denial of Prudential’s motion for summary judgment was not proper. As a result, Prudential is entitled as a matter of law to summary judgment finding that its policy did not provide UM coverage to Jennifer Armand under the facts and circumstances of this case. Because of our disposition on this issue, Prudential’s arguments regarding La. R.S. 1406 D(l)(e) are moot.
DECREE
For the foregoing reasons, the trial court’s judgment is reversed. IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that summary judgment is rendered in favor of defendant-applicant, Prudential Property & Casualty Insurance Company dismissing plaintiffs demand against it, at plaintiffs cost.
REVERSED AND RENDERED.
THIBODEAUX, J., dissents and assigns written reasons.

. It is not clear from Armand’s petition whether Shelter Mutual Insurance Company was her insurer. Paragraph X of her petition states:
Petitioner further shows that at the time of the accident, defendant, Shelter Mutual Insurance Company, had in full force and effect a policy of liability insurance on the 1991 Mitsubishi automobile registered to plaintiff, Jennifer L. Armand, affording coverage for the negligent acts committed herein by the defendant, Kenneth A. Doggett, in providing coverage for the claims asserted herein by plaintiff.

. Prudential acknowledges in its brief that separate counsel has been retained to defend the liability claims against its insured, Kenneth A. Doggett, Sr.

.La.R.S. 22:1406 D(l)(e) states:
The uninsured motorist coverage does not apply to bodily injury, sickness, or disease, including death of an insured resulting therefrom, while occupying a motor vehicle owned by the insured if such motor vehicle is not described in the policy under which a claim is made, or is not a newly acquired or replacement motor vehicle covered under the terms of the policy. This provision shall not apply to uninsured motorist coverage provided in a pol *548 icy that does not describe specific motor vehicles.

. By Acts 1996, 1st Ex.Sess., No. 9, Article 966 of the Louisiana Code of Civil Procedure was amended effective May 1, 1996. Art. 966 A(2) now provides that "summary judgment is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969.” Additionally, the amended article also states that summary judgment is now favored and that the summary judgment procedure shall be construed to accomplish these ends. The article further provides that a summary judgment may be rendered on the issue of insurance coverage alone. However, because of our disposition in this case, we find it unnecessary to address the change in the law.

. Prudential also attached to its motion for summary judgment the five page deposition of Ken *551 neth A. Doggett, Sr. Doggett testified that he was married to Debra Doggett at the time of the accident. However, he noted that he divorced Debra after the accident and married Jennifer Armand. At the time of the accident, Doggett stated that he lived on Charleston Circle in an apartment complex in Alexandria, Louisiana. He further stated the Armand also lived in Alexandria although at a separate location, Pecan Grove Apartments. On the day of the accident, Doggett testified that he was driving Armand's car back from her father’s house in Cottonport, Louisiana. He also noted that his two minor sons were passengers in the car, along with Armand.

. Prudential admits that Doggett and his two minor sons, who were passengers in Armand's automobile, would be covered by Doggett’s UM policy.