697 So.2d 311 (1997)
Gail JOHNSON, Elvira Collins and John Collins
v.
Troy DAVIS, Old Hickory Casualty Insurance Company, et al.
No. 96-CA-2463.
Court of Appeal of Louisiana, Fourth Circuit.
June 25, 1997.
*313 James G. Kambur, Brian G. Meissner, New Orleans, for Plaintiffs-Appellants.
Kristopher M. Redmann, Claude F. Bosworth, Lugenbuhl, Burke, Wheaton Peak, Rankin & Hubbard, New Orleans, for Defendant-Appellee.
James L. Trinchard, David P. Curlin, Trinchard & Trinchard, New Orleans, for Amicus Curiae.
Before BYRNES, JONES and WALTZER, JJ.
BYRNES, Judge.
On September 7, 1991, defendant-appellee, Budget Rent A Car Systems, Inc. ("Budget") entered into an automobile rental agreement with plaintiff-appellant, Gail Johnson. Later that same day, Johnson was involved in an automobile accident in the leased vehicle. Plaintiffs-appellants, Elvira Collins and John Collins were passengers in the leased vehicle at the time of the accident. They seek uninsured motorist coverage pursuant to the rental agreement with Budget for damages allegedly sustained by them in the accident, although they were not parties to the agreement. The Collinses appeal the partial summary judgment dismissal of their claims against Budget. We affirm.
It is undisputed that the Budget agreement provided no opportunity to accept UM coverage.

I. THE BUDGET RENTAL AGREEMENT SHALL BE TREATED AS PROVIDING "AUTOMOBILE LIABILITY INSURANCE COVERAGE" WITHIN THE INTENDMENT OF LSA-R.S. 22:1406 D
The Collinses' case is not based on the contention that Budget was required to furnish liability coverage and concomitant UM coverage in this case. However, the *314 Collinses contend that once a self-insurer[1] such as Budget "undertakes the responsibility to provide liability insurance to its customers, there is a contract, separate and distinct from a certificate of self-insurance, which may by its terms, be considered a `policy'...." We agree. Hearty v. Harris, 574 So.2d 1234, 1239 (La.1991); Ashline v. Simon, 466 So.2d 622, 623 (La.App. 5 Cir.), writ denied, 472 So.2d 28 (La.1985); Tallman v. Champion Ins. Co., 93-1313 (La.App. 4 Cir. 4/14/1994); 635 So.2d 1328, 1329.
This case turns on the meaning and legal effect to be given to the following language found in the rental agreement:
LIABILITY INSURANCE: IF THERE IS NO VIOLATION OF ANY OF THE USE RESTRICTIONS IN PARAGRAPH 5 ABOVE, Renter and any Authorized Driver shall, while operating the vehicle, be provided with liability coverage in accordance with the standard provisions of a Basic Automotive Liability Insurance Policy or in accordance with the requirements of a qualified self-insurer instead of such coverage, for protection against liability for causing bodily injury (including death) and property damage with one of the following applicable coverage limits. [Emphasis added.]
-coverage limits imposed by the state financial responsibility law where the accident occurs; OR
-coverage limit of $100,000 for each person, but not more than $300,000 for each occurrence, and property damage limits of up to $25,000 for each occurrence if a Renter, at the time of rental, possessed valid Budget CorpoRate or Sears Checklist Charge credentials, and such rental is charged at a valid Budget Corporate or Sears Checklist Charge rate.
-(if S.L.I. is offered and accepted, a higher limit of liability insurance will be provided as described in the applicable brochure.)
A. All coverages automatically conform to the basic requirements of any "No Fault" law which may be applicable. RENTER WAIVES UNINSURED AND UNDERINSURED MOTORIST, SUPPLEMENTAL NO FAULT AND OTHER OPTIONAL COVERAGES. If any coverages herein cannot be excluded or waived, Renter agrees that such coverages shall be automatically reduced to the minimum requirements of the applicable financial responsibility law and that such coverages shall be excess to any other applicable insurance.
We find that this language in the rental agreement constitutes an undertaking by Budget to provide liability coverage as explained by the above cited cases.[2] Therefore, having undertaken to provide liability coverage, Budget was required to also offer UM coverage. Instead, it is undisputed that the rental agreement offered no opportunity to accept UM coverage. Budget having failed to offer UM coverage, the rental agreement is reformed by operation of law to provide UM coveragebut only to "insureds."[3]

II. WHERE UM COVERAGE IS NOT WAIVED, IT IS PROVIDED BY LAW ONLY TO INSUREDS.[4]
LSA-R.S. 22:1406 requires that insurance policies provide uninsured motorist *315 coverage only for persons insured under the policy. Seaton v. Kelly, 339 So.2d 731, 734 (La.1976). A person who does not qualify as an "insured" under a policy of insurance is not entitled to UM coverage. Mills v. Hubbs, 597 So.2d 87, 89 (La.App. 4 Cir.1992); Guedry v. Fromenthal, 633 So.2d 287, 289 (La.App. 1 Cir.1993).
This Court had the opportunity to discuss this issue at some length in Hobbs v. Rhodes, 95-1937 (La.App. 4 Cir.11/30/95); 667 So.2d 1112, 1115-1116, writ denied, 672 So.2d 691 (La.5/3/96):
In Mills v. Hubbs, 597 So.2d 87, 89 (La. App. 4th Cir.1992), writ denied 600 So.2d 677 (La.1992) this Court held:
The Louisiana Uninsured Motorist Statute, LSA-R.S. 22:1406 requires that, unless it is waived, all policies issued in Louisiana shall provide UM coverage for persons who qualify as "insureds" under the policy.
Applying Mills, an employee who is an insured under the policy would also have UM coverage unless that coverage is waived.
The Mills holding is confirmed in Howell v. Balboa Ins. Co., 564 So.2d 298 (La.1990), in which the Louisiana Supreme Court held:
[A]ny person who enjoys the status of insured under a Louisiana motor vehicle liability policy which includes uninsured/underinsured motorist coverage enjoys coverage protection simply by reason of having sustained injury by an uninsured/underinsured motorist. Howell, 564 So.2d at 301.
* * * * * *

[B]ecause he would not have been covered under the general liability section of the policy, he could not have UM coverage. [Emphasis added throughout.]
Therefore, if the Budget rental agreement is treated as providing "automobile liability coverage" within the intendment of the UM statute, LSA-R.S. 22:1406 D, then Budget is required to offer UM coverage to any "insureds" under the agreement.

III. THERE IS NO STATUTORY OR PUBLIC POLICY REQUIREMENT THAT GUEST PASSENGERS BE INCLUDED AMONG "INSUREDS."
If LSA-R.S. 22;1406 does not require that guest passenger UM coverage be offered to begin with, it is not logical to argue that guest passenger UM will be imposed solely as a result of the insurers failure to offer UM coverage.
The cases cited above hold that a self-insured car rental agency may not provide liability insurance to its lessees without offering UM coverage to liability insureds. The law does not mandate that self-insured rental car agencies include guest passengers among those it defines as liability insureds under its rental agreements. It is not against public policy for an automobile rental agency to restrict liability coverage to certain designated drivers. Hearty, 574 So.2d at 1242. The Supreme Court in Hearty held that self-insured rental car agencies may provide liability coverage without providing Omnibus coverage. Hearty noted that the legislature recognized "the unique nature of rental car agencies." Therefore, a self-insured rental car agency may limit who it insures in its rental agreements.
Most recently, in Armand v. Rhodes, 96-15 (La.App. 5 Cir. 12/11/96); 685 So.2d 546, the court found that there is no statute or public policy requiring automobile liability policies to provide UM coverage to a guest passenger of an insured when the guest passenger is not an insured under the policy. However, we acknowledge that it is possible to distinguish Armand from the instant case, because Armand relied, at least in part, on the principle that insurers are not required to provide blanket coverage "for non-owned cars." Id., 685 So.2d at 552. In Armand the insured was not driving an insured vehicle.
We must now determine whether it is mandatory for a liability-insuring-automobile-rental agency such as Budget to include guest passenger UM coverage on the insured vehicle in any UM coverage it is required to offer.
Following the logic of Hearty, if public policy does not require rental car agencies to *316 offer omnibus liability coverage for drivers of the leased vehicle, we see no reason why public policy would require UM coverage for guest passengers who are not "insureds" under the rental agreement.
In Mills v. Hubbs, 597 So.2d 87, 89 (La. App. 4 Cir.1992) this Court noted that:
In Plaisance v. Fogg, 568 So.2d 1119 (La. App. 3d Cir.1990), writ denied 572 So.2d 63 (La.1991), the Court found that an employee did not qualify and was specifically excluded from the definition of "insured" under the liability provisions so that UM coverage was not mandated by statute.
Therefore, in Mills this Court indicated that "insureds" for UM coverage purposes need include only those required to be included by law or public policy among those insured against exposure to liability. There is no requirement to insure guest passengers for liability. As automobile liability policies need not include guest passengers among those insured against liability, such policies need not provide UM coverage to guest passengers.
The amicus brief cites Tapia v. Ham, 480 So.2d 855 (La.App. 2 Cir.); writ denied, 484 So.2d 138 (La.1986), for the contrary proposition that when UM coverage is imposed by statute, it must include guest passenger coverage. In Tapia the court did award UM coverage to both the driver and the guest passenger, but the language of the agreements involved contained no limiting language comparable to the language in the Budget rental agreement now before this court. The Tapia court did not even consider the question of whether there is a statutory mandate or public policy requiring UM coverage for guest passengers. The only inference to be drawn from Tapia is that the result in that case was dependent on the specific language found in the agreements before the court:

Construing this explicit and unconditional language in the Rent-A-Car System agreement, we hold that the obligation to provide excess liability coverage existed to protect, or to benefit, not only Ford and Wray, but the lessee of the automobile. Benzinger and her passenger would be third party beneficiaries of any excess liability policy that Ford might have purchased to fulfill its obligation. [Emphasis added.]
Tapia, 480 So.2d at 859.
The amicus brief contends that the language in the rental agreement limiting the UM coverage to the minimum required by law does not specifically restrict such UM coverage to authorized drivers and, therefore, should be deemed to include guest passengers, citing Baesler v. State Farm Mut. Auto. Ins. Co., 481 So.2d 131 (La.1986). However, the intent to provide as little UM coverage as possible, which could not have been more clearly expressed in the UM language of the Budget rental agreement, coupled with the fact that guest passengers are not "insureds" under the language of the Budget rental agreement permits of only one reasonable reading of the rental agreement,[5] i.e., there was no intent to provide UM coverage to guest passengers. Baesler was concerned not with a car rental agreement, but an automobile liability insurance policy. Baesler is not relevant because the policy in Baesler contained specific language providing UM coverage on a broader basis and with fewer restrictions than the liability section of the policy:

SECTION II

PROTECTION AGAINST BODILY INJURY BY UNINSURED AUTOMOBILES
COVERAGE SSUninsured Motorists InsuranceAllstate will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called `bodily injury,' sustained by the insured, caused by accident and arising out of the *317 ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so, the amount thereof, shall be made by agreement between the insured or such representative and Allstate or, if they fail to agree may be made by arbitration.
* * * * * *
1. `insured' means:

(a) the named insured as stated in the policy, the spouse of any named insured and relatives of either, while residents of the same household;
(b) any other person while occupying an insured automobile; and
(c) any person, with respect to damages he is entitled to recover because of bodily injury to which this coverage applies sustained by an insured under (a) or (b) above.
The insurance applies separately with respect to each insured, but the application of the insurance to more than one insured shall not operate to increase the limits of Allstate's liability.
[Emphasis added.]
Baesler, 481 So.2d 131, fn. 1.
Baesler is distinguishable on several grounds:
1. Baesler was a driver claiming UM coverage, not a passenger.
2. Baesler was the insured under the policy.
3. The policy contained very clear and very broad UM coverage language.
As the court noted in Baesler:

Under the Allstate policy, whether Baesler was assigned the vehicle for his regular use is immaterial. He is covered as against uninsured motorists while driving any vehicle, while occupying any vehicle, or while walking down the road. [Emphasis added.]
Baesler, 481 So.2d at 132.
Thus Baesler is simply another case in which UM coverage was found to apply because the particular language of the particular policy explicitly provided UM coverage under the facts of that case. Nothing explicit or implicit in the Baesler opinion has any bearing on the instant case. The issue is not whether UM coverage may, by contract, be provided on a broader basis than liability coverage. We do not dispute that. We take the position only that there is no statutory or public policy requirement to extend UM coverage beyond liability insureds.
The amicus brief also cites Comberrel v. Basford, 550 So.2d 1356 (La.App. 5 Cir.1989) because of the following dicta:
We also reject Sunset [Insurance Company's] argument that there must be proof of underlying liability coverage in order for there to be UM coverage. [Citing Baesler, supra.]

Comberrel, 550 So.2d at 1364.
In Comberrel Sunset Insurance Company argued that its policy did not provide liability insurance under the fact situation before the court, and without such underlying liability coverage there can be no UM coverage. However, the Comberrel court found that Sunset had made a stipulation of UM coverage having the force of law between the parties which superseded any provisions in the policy to the contrary. Comberrel is authority for nothing more than that an insurance company may be held to a judicial confession of UM coverage, provisions of the policy to the contrary notwithstanding. Additionally, we note that the Comberrel court also found after reading Sunset's policy that "the policy provides UM coverage...." Id. at 1363. There is nothing in Comberrel that supports a finding of UM coverage in the instant case.
We find that the decision in Puckett v. Hertz Corp., 535 So.2d 511 (La.App. 2 Cir. 1988) is an inexplicable anomalous deviation from the otherwise firmly established line of cases holding that UM coverage is only required for "insureds."[6]Puckett held that a *318 guest passenger was entitled to underinsured motorist coverage under a Hertz rental agreement which stated that:
[Hertz] provides liability coverage for Customer and any Authorized Operator(s) in accordance with standard provisions of a basic automobile liability insurance policy
...
The Hertz agreement specifically excluded UM coverage. Hertz in Puckett made the same arguments made herein by Budget:
(1) If its rental agreement is tantamount to insurance, then the only insureds would be the "Customer and any Authorized Operator"; and
(2) Therefore, guest passengers would not be afforded UM coverage under the rental agreement because they are not insured's and LSA-R.S. 22:1406(D) requires UM coverage only for insureds.
Puckett, 535 So.2d at 514, held that the rental agency forfeited its right to restrict its UM coverage when it failed to offer UM coverage:
For UM purposes, one or more of the authorized operators [Hertz's "insureds"] must have been given the privilege of rejecting or selecting limits of UM coverage higher or lower than the liability coverage provided by the contract. LRS 22:1406(D); Aramburo v. Travelers Insurance Co., [426 So.2d 260 (La.App. 4th Cir. 1983)], writ denied. The failure of the insurer to have an insured exercise the option in writing shall invalidate all provisions of the contract to the contrary and the contract shall be deemed to include the statutory UM coverage in an amount equal to the liability coverage. Sec. 1406(D). Capone v. King, 467 So.2d 574 (La.App. 5th Cir.1985), writ denied. [Emphasis added.]
Puckett fails to explain why the court required Hertz to provide UM coverage to a guest passenger who apparently was not an "insured." The only parties referred to in Puckett as "insureds" were the "authorized operators" under the rental agreement. Puckett says that LSA-R.S. 22:1406 D(2)(b) "clearly applies." LSA-R.S. 22:1406 D(2)(b) is what is commonly referred to as the "underinsured" motorist law. Although the Puckett opinion is not clear, our best guess is that Puckett read the reference to "passengers" in LSA-R.S. 22:1406 D(2)(b) as providing UM coverage to guest passengers whenever the insurer failed to offer UM coverage. The purpose of LSA-R.S. 22:1406 D(2)(b) is:
1. To describe how to determine when an underinsured situation exists; and
2. To declare that underinsured situations shall be treated the same way uninsured situations are treated.
It is in the context of determining whether an underinsured situation exists that "passengers" are referred to in LSA-R.S. 22:1406 D(2)(b). LSA-R.S. 22:1406 D(2)(b) does not purport to determine the class of persons for whom UM coverage must be provided once an underinsured situation is determined to exist. For purposes of determining how much coverage is required and for whom such coverage is required, LSA-R.S. 22:1406 D(2)(b) states, "For purposes of this coverage the term uninsured motor vehicle shall, subject to the terms and conditions of such coverage," referring back to the general UM provisions found in LSA-R.S. 22:1406 D(1)(a)(i) which require UM protection only for "insureds." Cf. Nall v. State Farm Mut. Auto. Ins. Co., 406 So.2d 216, 219 (La.1981).
In Nall the passenger-plaintiff was injured through the negligence of his underinsured driver. Nall incorporated LSA-R.S. 22:1406 D(1)(a)(i) by reference into LSA-R.S. 24:1406 D(2)(b). Nall explained that LSA-R.S. 22:1406 D(1)(a)(i),
requires insurance companies to offer coverage to their liability policy holders "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of *319 uninsured or underinsured motor vehicles." [Emphasis supplied by Nall.]
The liability coverage of the driver in Nall was insufficient to satisfy the damages sustained by his guest passenger, so in a literal sense the driver could be said to be an underinsured operator. But the Supreme Court, instead of focusing on the out of context phrase "owners or operators of uninsured or underinsured motor vehicles", found that the UM statute as a whole contemplated two distinct automobiles: the vehicle with respect to which the UM coverage is issued, and the uninsured or underinsured vehicle. Nall, 406 So.2d at 220, quoting from Breaux v. Government Emp. Ins. Co., 369 So.2d 1335 (La.1979.) As the plaintiff was asserting the underinsured status of the vehicle with respect to which the UM coverage was issued, the Nall court found that the insurance company had the right to exclude guest passenger underinsured coverage. In other words, although the driver in Nall was literally an owner or operator of an underinsured vehicle vis a vis his guest passenger, the Supreme court found that his policy only provided UM coverage for other underinsured vehicles, not his own. Nall is a clear indication that the admonition to construe the UM statute liberally in favor of coverage is not license to seize upon isolated phrases in the statute out of context, although some such phrases might literally, when read out of context, appear to require UM coverage.
We are not bound by Puckett and decline to follow it. Puckett correctly states that the law will impose "statutory" UM coverage where the insurer has failed to offer the required UM options, but Puckett fails to take into account that statutory UM coverage is limited to "insureds."
Because LSA-R.S. 22:1406 D(2)(b) applies only to underinsured and not uninsured situations, if we were to read it the way Puckett seems to read it, it would mean extending UM coverage to guest passengers in underinsured situations even when they are not insureds, while guest passengers who are not insureds in uninsured situations would receive no UM coverage. We are convinced that the legislature did not intend to treat underinsured guest passengers better than uninsured guest passengers. Cf. Nall, 406 So.2d at 219.
Where, as in the instant case, no named insured has been given the opportunity to elect UM coverage, LSA-R.S. 1406 D(1)(a)(i) mandates coverage of "not less than the limits of bodily injury liability provided by the policy." The purpose of this language is to designate the amount of coverage required in default of a proper offering of UM options. This language was not intended to expand the class of persons (the "insureds") to whom the UM coverage would be extended when an insurer fails to offer UM coverage. In other words, if a guest passenger is not an insured, the failure to offer UM coverage does not make the guest passenger an insured, which is what Puckett implicitly does.
Therefore, as Budget is not required by law to offer UM coverage to guest passengers, the Collinses have no UM coverage unless the rental agreement includes guest passengers among its insureds.

IV. THE RENTAL AGREEMENT DOES NOT INCLUDE GUEST PASSENGERS AMONG THOSE "INSURED"
The Collinses contend that the crux of this case is found in the following rental clause:
Renter and any Authorized Driver shall, while operating the vehicle, be provided with liability coverage in accordance with the standard provisions of a Basic Automotive Liability Insurance Policy .... [Emphasis added.]
The Collinses focus on the language "in accordance with the standard provisions of a Basic Automotive Liability Insurance Policy..."
The Collinses argue that this language affords them all of the benefits of the standard provisions of a "Basic Automotive Liability Insurance Policy", including the UM coverage provisions of such a policy. The Collinses contend that the "Basic Automotive Liability Insurance Policy" referred to in the rental agreement is the same as the "Personal Auto Policy" as set forth in Appendix A of McKenzie & Johnson's Louisiana Civil Law TreatiseInsurance Law and Practice. *320 This "Personal Auto Policy" contains a separate UM coverage section which specifically provides UM coverage for "any other person occupying your covered auto...."
Assuming for purposes of argument that the reference in the rental agreement to "a Basic Automobile Liability Insurance Policy" is a reference to the McKenzie & Knight standard form "Personal Auto Policy", the rental agreement refers only to "liability coverage." The rental agreement does not incorporate the entirety of any policy by reference, only the liability coverage. The rental agreement does not state that it "provides to the lessee insurance coverage on the same basis as any standard form liability policy." The Budget agreement simply does not contain any such broad language expressing an intent to incorporate all coverages of any standard form policy, including the McKenzie & Knight "Personal Auto Policy." Assuming that the standard form coverage referred to is to be found in the McKenzie & Knight "Personal Auto Policy" such standard form coverage is clearly limited by the Budget rental agreement to:
1. Renter and any Authorized Driver (the McKenzie & Knight "Personal Auto Policy" covers the insured and any family member, or any other driver of the vehicle insured.); and
2. While operating the vehicle; and
3. Liability coverage for protection against liability (the McKenzie & Knight "Personal Auto Policy" provides other clearly irrelevant coverages discussed below); and
4. No UM coverage, or, if that is not legally permissible, then as little UM coverage as is permitted by law.
The McKenzie & Knight "Personal Auto Policy" referred to by the Collinses contains a separate and discrete: "PART ALIABILITY COVERAGE." This is the only part of the "Personal Auto Policy" referred to by the rental agreement, assuming that it refers to that policy at all. The "Personal Auto Policy" also contains other sections unrelated to liability coverage such as: "PART BMEDICAL PAYMENTS COVERAGE." This section provides medical payments coverage to the "covered person" (insured) or any family member as a pedestrian when struck by a motor vehicle. There is no reason for Budget as a car rental agency to insure its lessee and family members as pedestrians, and we do not believe that the lessee had any reasonable expectation of such coverage. Yet, if we incorporate all of the coverages of the "Personal Auto Policy" into the rental agreement as we are urged to do by the Collinses that is the logical outcome. The McKenzie & Knight "Personal Auto Policy" also provides medical payments coverage for the insured or any family member injured in any motor vehicle, not just "covered autos." We can think of no reason why a car rental agency would want to cover its lessee, much less unlisted family members, while occupying a non-leased vehicle, nor do we believe that Budget's lessee had any reasonable expectation of such coverage in the absence of more specific language. Nor do we find any statutory or public policy expectation that a rental agency provide such coverage. Yet that is what the logic of the Collinses' argument would require were we to incorporate all standard form coverages into the rental agreement rather than just liability coverage as called for in the agreement.[7]
Where the interpretation of the agreement as suggested by Budget is consistent with the clear language of the agreement and leads to no unreasonable consequences, i.e., the coverage limitations found in the Budget agreement are consistent with the rental relationship between the parties and all that one would reasonably expect in the way of coverage arising out of such a relationship, it is to be preferred to the interpretation offered by the Collinses. The Collinses' reading of the rental agreement, on the other *321 hand, can only be achieved by excising language out of context and ignoring the logical consequences of such an interpretation. The Collinses interpretation requires the furnishing of coverage having no logical relevance to a short term auto rental agreement.
Although we treat Budget as an insurer and construe its rental agreement liberally in favor of coverage, we must do so in the context of a car rental agreement, remembering that the legislature has recognized the unique status of car leasing agencies (Hearty, supra) and that a person leasing an automobile does not have the reasonable expectation of the broad coverages one might expect in a personal insurance policy.
That the rental agreement intends only liability coverage is reinforced later in the same sentence of the rental agreement where it states that the liability coverage referred to earlier in the sentence is furnished "for protection against liability for causing bodily injury (including death) and property ..." This "protection against liability" is furnished according to the rental agreement to the "Renter and any Authorized Driver." The liability coverage is obviously not intended to be furnished to guest passengers for "protection against liability." The Collinses are not asking for "protection against liability." No one has asserted any claim of liability against them.
Assuming that the first paragraph of the "Liability Insurance" section of the Budget rental agreement is in any way ambiguous concerning the question of guest passenger UM coverage, which we do not believe to be the case, the ambiguity disappears when the clause is placed in the context of the agreement as a whole. Following the language relied upon by the Collinses, but still in the "Liability Insurance" section of the rental agreement we find in upper case letters:
RENTER WAIVES UNINSURED AND UNDERINSURED MOTORIST, SUPPLEMENTAL NO FAULT AND OTHER OPTIONAL COVERAGES.
This preprinted language is a clear and unambiguous expression of Budget's intent not to offer UM coverage. This expression of intent is given extra emphasis by the use of upper case letters. It is further reinforced by the next sentence in the same paragraph of the rental agreement:
If any coverage herein cannot be excluded or waived, Renter agrees that such coverage shall be automatically reduced to the minimum requirements of the applicable financial responsibility law and that such coverages shall be excess to any other applicable insurance. [Emphasis added.]
This sentence read in conjunction with the previous sentence makes it unambiguously clear that Budget intends to provide no UM coverage unless required to do so by law, and then only to the extent minimally required by law. In this case because Budget failed to provide the required opportunity to elect UM coverage, LSA-R.S. 22:1406 D(1)(a)(i) mandates minimum coverage of "not less than the limits of bodily injury liability provided by the policy"; but such UM coverage is only mandated "for the protection of persons insured ..."
Budget is not required to offer guest passenger UM coverage. There is no public policy against excluding guest passenger UM coverage when the guest passengers are not "insureds." The language of the rental agreement expresses an intent to deny UM coverage to the extent legally possible. As it is legally possible to deny UM coverage to guest passengers, then this Court should give effect to the rental agreement to that extent, i.e., we should deny UM coverage to the Collinses.
LSA-R.S. 22:1406 D(1)(a)(i) requires UM coverage for "liability arising out of the ownership, maintenance or use of any motor vehicle ..." Emphasis added.
The Collinses contend that this language quoted from LSA-R.S. 22:1406 D(1)(a)(i) mandates coverage for occupants of vehicles because occupants are making "use" of the vehicle. There is no question that their injuries arose out of the use of the Budget vehicle. The phrase "ownership, maintenance or use" refers to the activities or events from which liability in connection with the vehicle might arise. Edwards v. Horstman, 96-1403 (La.2/25/97); 687 So.2d 1007; Kessler v. Amica Mut. Ins. Co., 573 *322 So.2d 476, 477 (La.1991); Byrne v. State Farm Ins. Co., 572 So.2d 728 (La.App. 4 Cir.1990). Automobile liability policies covering any of those activities or events are required to provide UM coverage. The phrase does not refer to those persons for whom UM coverage must be provided under the policy. That issue is addressed later in the same sentence of the UM statute by the phrase stating that the required UM coverage is "for the protection of persons insured [emphasis added] ..." under the policy. The Collinses are only "persons insured" if they are so designated in the rental agreement or if they are so designated by operation of law. They are neither.
Moreover, if we describe the Collinses as "users" of the rented vehicle as they urge us to do they are hoist on their own pitard. The rental agreement unambiguously provides liability coverage only "IF THERE IS NO VIOLATION OF ANY USE RESTRICTIONS IN PARAGRAPH 5 ..." Paragraph 5 provides that "Renter and Authorized Driver agree that the Vehicle will not be used [emphasis added] ... by anyone other than a person authorized under the Rental Agreement to drive the vehicle." It is undisputed that the Collinses were neither "renters" nor "authorized drivers." If we classify them as "users", such use voids all coverage. Hearty, supra.
A dispute as to whether the language of an insurance agreement provides UM coverage can be properly resolved within the framework of a motion for summary judgment. Mills v. Hubbs, 597 So.2d at 89. We find that the clear and unambiguous language of the Budget rental agreement does not provide UM coverage for guest passengers and does not violate either statutory law or public policy.
For the foregoing reasons the judgment of the lower court is affirmed.

AFFIRMED.
JONES, J., dissents with reasons.
JONES, Judge, dissenting.
Under La.R.S. 22:1406, the Louisiana Uninsured Motorist Statute, an insurer who offers automobile liability insurance must also offer uninsured motorist coverage, which is deemed included in the contract unless specifically rejected by the insured.
This court, in Robinson v. Moore, 580 So.2d 1109, 1112 (La.App. 4th Cir.1991) stated that:
"when an auto leasing agency contracts with a third party to provide insurance coverage, the agency then effectively `sells' a portion of that policy to each lessee, whether the insurance is included in the flat lease rate or as a separate charge. As a result, the lessee becomes the `named insured' and, if not given the option to choose or waive uninsured motorist coverage, the policy liability limits become the uninsured motorist coverage by operation of law." Citing Quittem v. National Car Rental Systems, Inc., 582 So.2d 1337 (La. App. 4th Cir.1991).
In the instant case, Budget admits that Ms. Johnson, the lessee, was provided with uninsured motorist coverage because Budget did not offer the option to specifically reject coverage as required by law. Despite this admission, the majority concludes that the uninsured motorist coverage did not extend to the guest passengers of Ms. Johnson.
It is inconceivable to think that when enacting La.R.S. 22:1406, the legislature did not intend to protect guest passengers of a rental car lessee. The purpose of any compulsory insurance statute is primarily to provide compensation for innocent persons who suffer injuries through the faulty operation of a motor vehicle.
The majority would have us believe that the appellants were properly denied recovery because they are not the "insured" under the terms of the Budget contract. However, the Budget policy is ambiguous in this respect because it failed to define who was the "insured" under the terms of the contract. Additionally, when Ms. Johnson purchased the policy from Budget, she was not expressly informed nor did the policy contain a provision stating that guest passengers would not be covered. The majority opinion in this case clearly represents a major setback in the development of effective compulsory insurance law and policy. If the majority opinion *323 gains acceptance, the end result is that lessees of rental cars will be reluctant to carry passengers for fear that if an accident occurs, those injured persons will be left unprotected.
NOTES
[1] The Collinses do not contest Budget's self-insured status.
[2] Having determined that the rental agreement is to be treated as an undertaking to provide liability insurance equivalent to an insurance policy we shall throughout construe the rental agreement liberally in favor of the Collinses claim for coverage consistent with the unbroken line of cases, too numerous to mention, setting forth the requirements for the interpretation of insurance policy language. But in doing so we shall bear in mind that where the language of the insurance contract is clear and free from ambiguity, it constitutes the contract between the parties and must be enforced as written. Mills v. Hubbs, 597 So.2d 87, 89 (La.App. 4 Cir.), writ denied, 600 So.2d 677 (La.1992).
[3] LSA-R.S. 22:1406 D(1)(a)(i) specifies that UM coverage is "for the protection of persons insured..."
[4] We are cognizant throughout this opinion that there is a strong public policy in favor of UM coverage and that the UM statute is to be liberally construed in favor of such coverage. Armand v. Rhodes, 96-15, p. 7 (La.App. 3 Cir. 12/11/96); 685 So.2d 546, 550, writ denied, 97-0006 (La.3/21/97); 691 So.2d 81.
[5] Where there is only one such reasonable interpretation, by definition there can be no ambiguity creating a choice of interpretations from which the law requires that the interpretation favoring coverage be selected.
[6] McKenzie & Johnson, 15 Louisiana Civil Law Treatise: Insurance Law and Practice, (2d Ed.1996), Sec. 103 at 252-53, fn. 23 states:

The [Puckett] court does not adequately explain why UM coverage was mandated for the [passenger]. Hertz contracted to provide liability coverage only to the "Customer and any Authorized Operator(s)." The UM statute does not state that coverage is mandated whether for occupants of an insured auto or for persons who are occupying an automobile operated by a liability insured. It seems to require coverage only for persons who are entitled to liability insurance arising out of their operation or other use of the vehicle.
[7] The Supreme Court recently reasoned along analogous lines in Valentine v. Bonneville Insurance Company, 96-1382 at p. (La.3/17/97); 691 So.2d 665:

Because the Sheriff, as the employer of the deputies, has no obligation to supply the deputies with UM coverage at all, there is no reason to believe that the Sheriff intended to provide them with UM coverage at all times, all places and under all conditions. [Emphasis added.]