10 So.3d 356 (2009)
Myron NELSON, Jr. & Myron Nelson, Plaintiffs/Appellees
v.
Anthony Van ROBINSON, et al., Defendant/Appellant
Moncheri Nelson, Plaintiff/Appellee
v.
Anthony Van Robinson, et al., Defendant/Appellant.
Nos. 44,059-CA, 44,060-CA.
Court of Appeal of Louisiana, Second Circuit.
April 22, 2009.
Barrasso, Usdin, Kupperman, Freeman & Sarver, L.L.C. Allstate Insurance Co., by Judy Y. Barrasso, Catherine Fornias Giarrusso, New Orleans, for Appellant, Allstate Insurance Co.
*357 Peters, Ward, Bright & Hennessy, by Alan Stegall, Shreveport, for Appellees, Myron Nelson, Jr. & Moncheri Nelson.
David Harville, Jr., for Appellee, Myron Nelson, Sr.
Before BROWN, WILLIAMS, GASKINS, PEATROSS & LOLLEY, JJ.
PEATROSS, J.
In this automobile accident case, Myron Nelson, Jr. and Moncheri Nelson ("Plaintiffs"), were passengers in a vehicle driven by their father, Myron Nelson, Sr. The trial court found after trial that Mr. Nelson was solely at fault for the accident. That finding was not appealed. Allstate Insurance Company ("Allstate"), Mr. Nelson's insurer, settled with the Nelsons under the liability portion of the policy. Plaintiffs subsequently sought coverage under the uninsured motorist ("UM") portion of the same Allstate policy. The trial court held that there was UM coverage, despite the fact that Mr. Nelson, the host driver, was solely at fault for the accident. Allstate appeals. For the reasons stated herein, we reverse the judgment of the trial court and render judgment in favor of Allstate, dismissing with prejudice the claims of Plaintiffs.

FACTS
Mr. Nelson was driving his children, Myron Jr. and Moncheri, to Byrd High School on the morning of the accident. As he moved to the right to exit I-49 at Kings Hwy., he collided with the front left of a pickup driven by Anthony Van Robinson, causing the vehicles to spin out of control and hit the retaining wall.[1] Each of the three Nelsons sustained injuries and, together, filed suit against, inter alia, Mr. Nelson's insurer, Allstate. The policy had liability limits of $10,000/$20,000 and UM limits of $10,000/$20,000. Allstate settled with the Nelsons under the liability portion of the policy. Myron Jr. and Moncheri filed separate supplemental and amending petitions asserting coverage under the UM portion of the policy. The suits were consolidated and subsequently tried on February 25, 2008. As stated, the trial court found Mr. Nelson to be 100 percent at fault in the accident and this finding has not been appealed. The only issue before us, therefore, is whether there is UM coverage.
The policy's UM coverage part provides:
[w]e will pay those damages which an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of (1) bodily injury sustained by and insured person....
Bodily injury ... must be caused by accident and arise out of the ownership, maintenance, or use of an uninsured auto.
The policy further provides that an uninsured auto is "not ... a motor vehicle defined as an insured auto under part I, Automobile Liability Insurance, of this policy." The policy's liability coverage defines "insured auto" as "any auto described on the Policy Declarations." The vehicle driven by Mr. Nelson and in which his children were riding as passengers when the accident occurred is listed in the policy's declarations as a covered vehicle.
Louisiana's UM statute, La. R.S. 22:1295(2)(b), renumbered from La. R.S. 22:680 by Acts 2008, No. 415, § 1, eff. Jan. 1, 2009, provides:
(b) For the purposes of this coverage the term uninsured motor vehicle shall, subject to the terms and conditions of such coverage, also be deemed to include *358 an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the amount of damages suffered by an insured and/or the passengers in the insured's vehicle at the time of an accident, as agreed to by the parties and their insurers or as determined by final adjudication.
By 1987 La. Acts No. 444 (hereinafter referred to as the "1987 amendment"), the following was added to the UM statute as subsection 1(a)(iii):
(iii) This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state.
The trial court, in a succession of opinions, held that the 1987 amendment allowed an injured passenger to recover from both the liability and UM portions of the negligent host driver's insurance policy despite language in the policy prohibiting such recovery.[2] In effect, the trial court held that the above-quoted language in the Allstate policy is violative of the statute as amended and against public policy and is, therefore, invalid and unenforceable. Accordingly, the trial court found that Allstate must provide UM coverage for Plaintiffs' injuries. This appeal ensued.

DISCUSSION
We find the trial court's ruling to be contrary to established jurisprudence and conclude that the 1987 amendment did not overrule the well-settled law that an injured passenger may not recover under both the liability and UM portions of the host driver's policy where the host driver was 100 percent at fault in the accident. We further find that the language in the Allstate policy prohibiting such coverage is valid and enforceable.
The seminal case is Breaux v. Government Employees Insurance Co., 369 So.2d 1335 (La.1979), wherein the supreme court held that the plaintiffs could not recover for the death of their daughter under the UM provisions of the host driver's policy, where the sole cause of the accident was the host driver's negligence. This rule was followed two years later in Nall v. State Farm Mutual Automobile Insurance Co., 406 So.2d 216 (La.1981), when the supreme court again validated policy language that precluded a plaintiff from recovering under the policy's UM coverage because the host driver's vehicle was "an insured vehicle" under the liability portion of the policy. This court interpreted and explained the rulings in Breaux and Nall in Johnson v. Jackson, 504 So.2d 88 (La. App. 2d Cir.1987), writ denied, 506 So.2d 1230 (La.1987). Although Johnson was decided on other grounds, this court explained that the Breaux and Nall decisions established that the "UM statute does not require that an injured guest be afforded coverage under both the liability and UM coverages of the host's policy where the negligence of the host caused the accident." Johnson, supra. The clauses in the insurance policies that denied UM coverage in those cases was "valid and not in derogation of the mandatory requirements set forth in our UM statute." Id.
This court again recognized the Breaux/ Nall rulings in Bamburg v. State Farm Mutual Automobile Ins. Co., 26,324 (La. App. 2d Cir.12/7/94), 647 So.2d 447, explaining the rationale as follows:

*359 Furthermore, as stated, Joshua's injuries resulted solely from the negligence of the host driver. In that situation, it is well settled that a passenger may not collect under both the liability and UM provisions of the policy insuring the involved automobile, even if that contract encompasses several vehicles. See Breaux v. Government Emp. Ins. Co., 369 So.2d 1335 (La.1979); Cannon v. Allstate Ins. Co., 595 So.2d 745 (La.App. 4th Cir.1992), writ denied, [598 So.2d 359 (La.1992)]; Leboeuf v. Lloyd's of La., 572 So.2d 347 (La.App. 1st Cir. 1990), writ denied, [575 So.2d 393 (La. 1991)]; Hasha v. Calcasieu Parish Police Jury, 539 So.2d 779 (La.App. 3d Cir.1989), writ denied, [541 So.2d 872 (La.1989)]. Simply put, one cannot be insured with respect to liability coverage and underinsured with respect to UM coverage under the same insurance policy. Leboeuf, supra. (Emphasis in original.)
In Gardner v. Allstate Insurance Co., 575 So.2d 883 (La.App. 2d Cir.1991), writ denied, 578 So.2d 139 (La.1991), this court noted that the object of the UM statute is to "promote full recovery for damages sustained by innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is without insurance and as additional or excess coverage when he is inadequately insured." Gardner, supra, citing Bosch v. Cummings, 520 So.2d 721 (La.1988). Quoting from Breaux and Nall, we then recognized that the statute contemplates "two distinct vehicles: the motor vehicle with respect to which uninsured motorist coverage is issued and the uninsured or underinsured motor vehicle." Gardner, supra.
This principle has been consistently acknowledged and/or followed by Louisiana courts for more than 25 years. See, e.g., Solice v. State Farm Mut. Auto. Ins. Co., 488 So.2d 1159 (La.App. 2d Cir.1986); Leboeuf, supra; Ramirez v. State Farm Auto. Ins., 07-785 (La.App. 3d Cir.12/05/07), 971 So.2d 474; Ceasar v. Hebert, 06-374 (La.App. 3d Cir.11/2/06), 941 So.2d 678; Lang v. Economy Fire & Cas. Co., 00-1634 (La.App. 3d Cir.4/4/01), 783 So.2d 587; Shipp v. State Farm Mut. Auto. Ins. Co., 415 So.2d 582 (La.App. 3d Cir.1982); Johnson v. Davis, 96-2463 (La. App. 4th Cir.6/25/97), 697 So.2d 311, writ denied, 97-2039 (La.11/21/97), 703 So.2d 1308; Insurance Company of North America v. Patton, 95-0732 (La.App. 4th Cir.12/14/95), 665 So.2d 1312; Cannon v. Allstate Insurance Co., supra. See also 15 La. Civ. L. Treatise, Insurance Law & Practice § 112 (3d ed.) and cases cited therein.
We now turn to the question of whether the 1987 amendment to the UM statute overruled this longstanding jurisprudentially established principle. Significantly, the majority of the cases cited herein were decided after the effective date of the amendment relied upon by the trial court in the case sub judice. There is scant case law specifically concerning the amendment; however, the cases applying the amendment clearly reflect that the language added by Act 444 was intended to extend geographically the scope of UM coverage beyond cases where the policy was issued in Louisiana and the vehicle was garaged in Louisiana. In Champagne v. Ward, 03-3211 (La.1/19/05), 893 So.2d 773, the supreme court explained that the amendment expands UM coverage to include coverage for any accident occurring in the state involving a resident of the state. In Ramirez, supra, the court expressly stated that the 1987 amendment did not legislatively overrule Breaux. Rather, the Ramirez court opined that the amendment addressed a different issue:

*360 The amendment requires that when an accident occurs in this state and involves a resident of this state, the requirement of [the Louisiana UM statute] will be enforced, and any liability policy will be deemed to have UM coverage unless it has been properly rejected as required in the statute. In the instant case, the issue is not whether the [host's] vehicle was covered by a liability policy which included UM coverage, the issue is the scope of the UM coverage.
We agree with the above reasoning and conclude that the 1987 amendment was intended to broaden the geographical scope of UM coverage and had no effect on the rule of law created in Breaux, supra, and its progeny. The trial court erred in finding to the contrary.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed and judgment is rendered in favor of Allstate Insurance Company, dismissing with prejudice the claims of Myron Nelson, Jr. and Moncheri Nelson. Costs of appeal are assessed to Myron Nelson, Jr. and Moncheri Nelson.
REVERSED AND RENDERED.
BROWN, Chief Judge, dissents with written reasons.
BROWN, Chief Judge, dissenting.
Uninsured/underinsured coverage is governed by La. R.S. 22:680. Subsection (1)(a)(iii) provides that UM coverage "shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state." Subsection (2)(b) provides that the term "uninsured motor vehicle" includes "an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the amount of damages suffered by an insured and/or the passengers in the insured's vehicle at the time of the accident..."
In Louisiana, courts have not enforced insurance policy provisions that purport to limit UM coverage. The language of the statute as amended in 1987 after the Breaux and Nall decisions is clear and unambiguous.
The 1981 decision in Nall v. State Farm, supra, was a five to two decision. The dissenting opinion states at 406 So.2d 216, 220:
R.S. 22:1406 clearly contemplates underinsured motorist coverage for an insured who is a passenger in an underinsured vehicle, and is injured by the negligence of the host driver. That part of Breaux v. Government Emp. Ins. Co., 369 So.2d 1335 (La.1979) to the contrary is wrong. R.S. 22:1406(D)(2)(b) clearly provides for it:
For the purposes of this coverage the term uninsured motor vehicle shall, subject to the terms and conditions of such coverage, also be deemed to include an uninsured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the amount of damages suffered by an insured and/or the passengers in the insured's vehicle at the time of an accident, as agreed to by the parties and their insurers or as determined by final adjudication.
Obviously, in the 1987 amendment, the legislature agreed with the dissent.
The trial judge was correct in his scholarly and logical conclusion.
NOTES
[1] A third vehicle was involved in the accident, but is not relevant on appeal.
[2] In a commendable effort to support his decision, the city court judge authored several explanatory opinions. While we recognize the extensive effort on the part of the trial judge, we are unable to agree with his conclusion to the effect that the established jurisprudence was abrogated by the 1987 amendment to the UM statute.