649 So.2d 631 (1994)
Dianna and Donald HEBERT, Plaintiffs/Appellants,
v.
HARTFORD INSURANCE COMPANY OF THE MIDWEST, et al., Defendants/Appellees/Appellants.
No. 94-316.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1994.
*632 Richard Charles Broussard, Lafayette, for Dianna Hebert et vir.
*633 Katherine Marie Loos, Lafayette, for Hartford Ins. Co., et al.
Edward O. Taulbee IV, Lafayette, for La. Farm Bureau Cas. Ins. Co.
L. Lane Roy, Lafayette, for Allstate Ins. Co.
Leslie J. Schiff, Opelousas, for Domengeaux & Wright.
Before DOUCET and PETERS, JJ., and BERTRAND,[*] J. Pro Tem.
LUCIEN C. BERTRAND, Jr., Judge Pro Tem.
Dianna and Donald Hebert filed suit to recover for personal injuries sustained in two separate accidents. On April 22, 1991, while Dianna was driving with Donald as a passenger, their Ford Tempo was rear ended on Johnston Street in Lafayette by a Ford Aerostar van. The van was owned by Raymond Breaux but was being driven by his major son, Marvin Breaux. On July 13, 1991, the Heberts were also injured in a boating accident near Biloxi, Mississippi, when a pleasure craft owned and operated by their family friend, Ernesto Jorajuria, struck a sandbar in the Tchoutacabouffa River.
The Heberts named as defendants Raymond Breaux and his insurer, Hartford Insurance Company of the Midwest, whose policy covered the Aerostar van; Marvin Breaux and his insurer, Louisiana Farm Bureau Casualty Insurance Company which had issued two separate policies covering two vehicles owned by the younger Breaux; and Ernesto Jorajuria and his watercraft liability insurer, Allstate Insurance Company.
The trial court denied Allstate's exception of improper cumulation of actions, and the trial of both accidents was presented before a single jury. After finding that both Marvin Breaux and Jorajuria were negligent, the jury awarded damages for each accident as follows:
AUTOMOBILE ACCIDENT:

 General Damages (Dianna Hebert) $35,000
 Special Damages (Dianna Hebert) 12,500
 Loss of Consortium (Donald Hebert) 5,000
BOATING ACCIDENT:
 General Damages (Dianna Hebert) $27,500
 Special Damages (Dianna Hebert) 15,000

Mrs. Hebert released Allstate upon payment of the judgment for the boating accident and perfected this appeal against Hartford and Farm Bureau. She contends that the trial court erred in permitting the jury to know that she pleaded guilty to two federal crimes in 1989 and in failing to instruct the jury to ignore certain comments made by defense lawyers in their opening statements and closing arguments. These errors, she argues, tainted the jury verdict and resulted in an unreasonably low damage award for the automobile accident. Farm Bureau answered the appeal, urging error in the determination that one of its policies issued to Marvin Breaux provided primary coverage for the Aerostar van on a pro rata basis with the Hartford policy.

EVIDENCE OF FELONY CONVICTIONS
In 1989, Dianna Hebert pleaded guilty to two federal crimes entitled "Conspiracy to Commit Offense or to Defraud United States" and "Theft, Embezzlement or Misapplication by Bank Officer or Employee." 18 U.S.C. §§ 371 and 656. She argues that the trial court erred in permitting the defendants to introduce any evidence of these crimes for impeachment purposes because their prejudicial effect far outweighed any probative value in these proceedings. She also contends that any reference to these crimes was misleading to the jury because she pleaded guilty only to "misapplication of bank funds" and not theft or embezzlement.
La.C.E. art. 609 provides in part:
A. General civil rule. For the purpose of attacking the credibility of a witness in civil cases, no evidence of the details of the crime of which he was convicted is admissible. However, evidence of the *634 name of the crime of which he was convicted and the date of conviction is admissible if the crime:
(1) Was punishable by death or imprisonment in excess of six months under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party; or
(2) Involved dishonesty or false statement, regardless of the punishment.
The trial court did not err in denying Mrs. Hebert's motion in limine to exclude any reference to the guilty pleas. Crimes of "conspiracy" and "misapplication" clearly involve dishonesty or false statement, and under article 609(A)(2) evidence of a conviction of such crimes is admissible without requiring the court to weigh its prejudicial effect. See also comment (b) to article 609, which states in part, "Further, Article 609(A)(2) reflects a legislative determination that as to such matters the balance is in favor of admissibility."
Mrs. Hebert next argues that the trial court erred in failing to admonish the jury to disregard certain comments made by the defense attorneys in their opening statements and closing arguments. In his opening statement, counsel for Allstate suggested that the criminal pleas involved misapplication of bank funds "to the tune of $530,000," and in his closing argument, counsel for Farm Bureau stated, "through the ages, employees have stolen from employers."
Plaintiffs' counsel did not immediately object to the first remark but requested an admonition at a bench conference held at the conclusion of opening statements. This request sparked a spirited discussion, and the record is unclear as to whether the trial court ruled on this request. After the second remark, plaintiffs' counsel objected and a bench conference off the record was held. Thereafter, defense counsel continued his argument, referring only to the crime of "misapplication." The record does not reflect that an admonition was requested at that time.
We agree with the plaintiff that both remarks were improper because they were not supported by the evidence and referred to facts that were inadmissible under La.C.E. art. 609(A). However, we cannot agree that these statements alone resulted in a tainted jury verdict. Instructions given by the judge, the arguments of plaintiffs' counsel and the evidence in the record all served to lessen whatever prejudicial impact the statements may have had. See Hebert v. Domingue, 473 So.2d 120 (La.App. 3rd Cir.), writ denied, 477 So.2d 708 (La.1985). The trial judge instructed the jury that statements of the attorneys were not evidence. In his closing argument, plaintiffs' counsel reminded the jury that there was no evidence of theft in the case. Mrs. Hebert testified that she pleaded guilty only to misapplication and conspiracy, not theft or embezzlement, and the jury was informed that Mrs. Hebert received a first-offender pardon. We also note that the issue of whether to admit any evidence of the two guilty pleas was bitterly contested at trial, with all counsel reaching the heights of zealous advocacy. We find no error in the trial court's control of this situation.

CAUSATION AND DAMAGES
Mrs. Hebert next argues that the jury erred in awarding only $12,500 in special damages and $35,000 in general damages for the automobile accident. She contends that the jury should have accepted the opinion of her treating physician that the vehicular collision and not the boating accidentproduced the injuries to her neck which ultimately required surgical treatment.
Mrs. Hebert testified that upon impact with the van she immediately felt a hot sensation in her neck. Later that evening, she called her doctor, reporting soreness in the neck and lower back, and was given a prescription over the telephone. Approximately one week later, still complaining of pain, she began treatment with Dr. Clifton Shepherd, an orthopedist in Lafayette.
During his initial examination, Dr. Shepherd observed tenderness and moderate spasm in her neck, with the cervical range of motion restricted to 75% of normal. X-rays revealed significant arthritic changes in her neck, the most severe being at C5-6. All *635 experts testified that these arthritic changes preceded the accident and were more prominent than what is usually expected in someone of Mrs. Hebert's age. Dr. Shepherd continued conservative treatment for the next three months, prescribing medication and cortisone injections which produced some improvement. Nonetheless, suspecting radiculopathy, Dr. Shepherd ordered a cervical MRI. Before this test could be performed, however, Mrs. Hebert sustained additional injuries in the boating accident.
The force of the boat striking the sand bar stripped the boat's console from its mounting, propelling the console onto Mrs. Hebert and Mrs. Jorajuria. Mrs. Hebert claims to have lost consciousness for about 45 minutes and has no memory of the events immediately following this accident. At the time, her most acute injury appeared to be a separated shoulder joint, which Dr. Shepherd would eventually repair with surgery.
Upon returning to Dr. Shepherd after this accident, Mrs. Hebert exhibited a significant decrease in the range of motion in her neck, with spasm, bruises and cuts. The MRI, performed four days after the second accident, revealed a herniation at C5-6. Dr. Shepherd continued to treat her with cortisone injections, but when no improvement was noted he referred her to a neurosurgeon. On December 9, 1992, Dr. John Jackson of Baton Rouge performed a cervical fusion. Mrs. Hebert recovered well from this operation, but she now has a 10% permanent disability of her body as a whole.
Dr. Shepherd testified that it would be "practical and common sense" to relate the neck injury to the first accident and the shoulder injury to the second, particularly when he had suspected a herniated disc before the second accident. However, he also stated that he could not rule out the possibility that the herniation was the result of both accidents, and in his progress reports he noted that it would be difficult to determine which accident caused the herniation.
Dr. John Jackson, the neurosurgeon who performed the cervical fusion, stated that the findings of Dr. Shepherd before the second accident indicated a need for surgery, but the boating accident increased the patient's symptoms to the point that she definitely required surgical treatment. He also acknowledged that degenerative changes can become painful, even without trauma.
Dr. John Clifford, Farm Bureau's expert, testified that the boating accident, which appeared to be the more severe of the two, was most likely responsible for the herniation. He maintained this opinion even after he was informed of the extent of the damages to the vehicles, stating that while the auto accident may have made Mrs. Hebert's pre-existing arthritis symptomatic, he questioned whether it would have been responsible for the herniated disc.
Where there are two accidents, the damages must be apportioned if possible, although apportionment has some degree of arbitrariness inherent in the process. Buccola v. Marchese, 599 So.2d 892 (La.App. 4th Cir.1992), citing Prosser on Torts, 2d edition; Adams v. Lammon, 93-1288, 1289 (La. App.4th Cir.3/29/94); 635 So.2d 373. Much deference is accorded the trier of fact on the question of causation. Rick v. State, DOTD, 93-1776, 1784 (La. 1/14/94); 630 So.2d 1271. The rule that questions of credibility are for the trier of fact applies to the evaluation of expert testimony, unless the stated reasons of the expert are patently unsound. Lirette v. State Farm Ins. Co., 563 So.2d 850 (La. 1990).
The jury awarded Mrs. Hebert $35,000 in special damages and $12,500 in general damages for the automobile accident. For the boating accident, the award consisted of $27,500 in general damages and $15,000 in special damages. The jury apparently concluded that both accidents significantly contributed to Mrs. Hebert's cervical injuries and the need for surgery. Upon review of the entire record, we cannot find manifest error in this result. The evidence supports the conclusion that the boating accident was quite severe. Mrs. Hebert was knocked unconscious and sustained other serious injuries, including a separated shoulder joint. Dr. Shepherd's notes indicate a significant aggravation of her cervical injuries after this accident. Further, Mrs. Hebert was not the only person injured in the boating accident; Mrs. Jorajuria suffered *636 five fractured ribs in the same incident. Even the plaintiffs' expert, Dr. Shepherd, could not rule out the possibility that the herniation was the result of both accidents.
We find no error in either the jury's apportionment of the award between the two accidents or in the total amount awarded. The total award of general damages, $62,000, is within an acceptable range for the injuries sustained. See Soudelier v. Miller, 537 So.2d 296 (La.App. 1st Cir.1988). Although Mrs. Hebert was not awarded all of her claimed medical expenses, there is sufficient evidence in the record for the jury to have concluded that some of those expenses would have been incurred because of her significant, pre-existing arthritic condition. We therefore affirm the jury award in its entirety.

INSURANCE COVERAGE
Marvin Breaux, the driver found at fault in this accident, owned two vehicles which he insured with Farm Bureau under two separate policies. At the time of the accident, Marvin Breaux was operating a Ford van owned by his father, Raymond Breaux, and insured by Hartford.
In answering this appeal, Farm Bureau contends that the trial court erred in finding that both Farm Bureau policies issued to Marvin Breaux provided coverage for this accident. After determining that the "other insurance" clause in both Farm Bureau policies was ambiguous, the trial court applied one Farm Bureau policy on a pro-rata basis with the Hartford policy and the other as excess coverage. Farm Bureau argues that the terms of its policy unambiguously restrict its exposure in this accident to the limits of only one policy and then on an excess basis only. The Farm Bureau "other insurance" clause provides:

2. Other Insurance.
Coverages A, B, D, and E. If the insured has other insurance against a loss covered by this policy, the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to "temporary substitute automobiles" or "use of other automobiles" shall be excess insurance over any other valid and collectible insurance. However, if the insured has more than one automobile insured in this company, then only one policy will become excess.
Absent conflict with statute or public policy, insurers may, by unambiguous and clearly noticeable provisions, limit liability and impose such reasonable conditions as they wish upon the obligations they assume by contract. Jones v. MFA Mutual Ins. Co., 410 So.2d 1190 (La.App. 3rd Cir.1982). In order for policy language to be considered ambiguous, it must be susceptible of two or more equally reasonable interpretations. Sharff v. Ohio Casualty Ins. Co., 605 So.2d 657 (La.App.2d Cir.), writ denied, 608 So.2d 196 (La.1992). An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. LIGA v. Interstate Fire & Casualty Co., 93-0911 (La. 1/14/94); 630 So.2d 759.
Where the meaning of a contract is to be determined solely from the words upon its face without the necessity of extrinsic evidence, the appellate courts are as competent to review the evidence as the trial court, and no special deference is usually accorded the trial court's findings. Schroeder v. Board of Supervisors, 591 So.2d 342 (La. 1991).
In Jones, supra, the plaintiff sought to "stack" the limits of two liability policies that were issued to the tortfeasor, who was driving a "non-owned automobile" in that accident. The court held that only one policy provided coverage for the plaintiff's injuries, relying on the language of the policy as well as those cases which had uniformally prohibited the "stacking" of multiple liability coverages within the same policy. Jones, at p. 1193.
In the instant case, the trial court compared the policy language in Jones to the Farm Bureau policies and concluded that the *637 Jones language clearly limited the insurer's exposure to one policy but that the Farm Bureau language did not. Although we acknowledge the difference in the language of the two policies, we are not convinced that a different result is compelled in this case.
Under the "use of other automobile" provision in Farm Bureau's policy, the named insured, Marvin Breaux, is provided liability coverage with respect to the "use of any other automobile," subject to other exclusions not pertinent herein. The "other insurance" clause of the Farm Bureau policy modifies this coverage, however, by clearly stating that it shall be excess insurance over any valid and collectible insurance. The policy then continues, stating that if the insurer has more than one automobile insured in this company, that only one policy will become excess.
The clear intent of this clause is to provide coverage on an excess basis only for "the use of other automobiles." We find nothing in the policy that suggests coverage for this situation should then become primary once again solely because the insured has two automobiles insured with the same company. The final sentence of the "other insurance" clause must be construed with reference to the language which immediately precedes it. We therefore must disagree with the trial court's conclusion that one Farm Bureau policy is to be applied on a pro rata basis with the Hartford policy. Under the unambiguous terms of the Farm Bureau policy, its coverage is only available as an excess policy. Because the amount of the plaintiffs' damages in this case did not exceed the limits of Hartford's liability policy, the plaintiffs are entitled to judgment against Hartford only.
For the above reasons the amount of damages awarded to the plaintiffs, Donald and Dianna Hebert, for the automobile accident is affirmed; however, the trial court judgment is reversed as to Louisiana Farm Bureau Casualty Insurance Company, and Hartford Insurance Company of the Midwest is cast in judgment for all damages attributable to the automobile accident. Costs of this appeal are assessed one-half to Dianna Hebert and one half to Hartford Insurance Company of the Midwest.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.