FAT CATZ MUSIC CLUB,
INC., ET AL.

VERSUS

FOUNTAIN SERVICES OF
LOUISIANA, INC. AND JERRY
SCHIFFMAN

\*      NO. 2020-CA-0586

\*

\*      COURT OF APPEAL

\*

\*      FOURTH CIRCUIT

\*      STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2015-01681, DIVISION "L"
Honorable Kern A. Reese, Judge
\* \* \* \* \* \*
**Judge Edwin A. Lombard**
\* \* \* \* \* \*

(Court composed of Judge Edwin A. Lombard, Judge Sandra Cabrina Jenkins,
Judge Tiffany G. Chase)

W. Patrick Klotz
KLOTZ & EARLY
909 Poydras Street, Suite 2950
New Orleans, LA 70112

       COUNSEL FOR PLAINTIFFS/APPELLEES

I. Matthew Williamson
MILLER & WILLIAMSON LLC
1515 Poydras Street, Suite 2130
New Orleans, LA 70112

       COUNSEL FOR DEFENDANTS/APPELLANTS

           **AFFIRMED IN PART;
REVERSED IN PART AND
RENDERED**

**APRIL 21, 2021**

The Appellants, Fountain Services of Louisiana, Inc. ("FSL") and Jerry Schiffman, seek review of the May 26, 2020 judgment of the district court wherein the court found the Appellants committed fraud, breached a beverage distribution contract, and violated the Louisiana Unfair Trade Practices Act ("LUTPA"). The court further awarded damages, costs and attorneys' fees totaling $651,394.34 to the Appellees, Fat Catz Music Club, Inc. d/b/a Fat Catz; Funky 544, LLC d/b/a Funky 544; Parsa Inc. d/b/a Industry Bar & Kitchen; Lower Decatur Entertainment LLC d/b/a Balcony Music Club; Bourbon At Toulouse LLC d/b/a Old Opera House; MBS Management LLC d/b/a Famous Door; Bourbon Nighttime LLC d/b/a Krazy Korner; and Promenade Entertainment LLC d/b/a Bourbon Bandstand. Additionally, the Appellants seek review of a January 24, 2019 judgment, wherein the district court granted a motion to compel in favor of the Appellees.

Based upon our review of the applicable facts and law, we find that the district court committed a legal error in awarding the Appellees treble damages under LUTPA. Thus, we reverse in part the May 26, 2020 judgment, rendering judgment in the amount of $155,093.89, which represents the Appellants actual

1

damages. Additionally, we reduce the award of attorneys' fees proportionately to $62,037.55. In all other respects, the May 26, 2020 judgment is affirmed. Lastly, we affirm the January 24, 2019 judgment of the district court, granting the Appellees' motion to compel.

## Facts and Procedural History

This appeal stems from a breach of contract and unfair trade practices dispute between the parties based upon the Appellants selling of counterfeit fountain soda syrup, primarily Coca Cola, products, to the Appellees, which are two corporations and six limited liability companies that operate various bars, music venues and restaurants in New Orleans. Jude Marullo is the president of said corporations and the member/manager of the limited liability companies at issue herein.

In 2009, the Appellees, through Mr. Marullo, sought beverage bids from distributors who delivered authentic Coca Cola or Coke products, including from the Appellants who had been supplying juice and other beverages to the Appellees since 2006. Based upon Mr. Schiffman's assurances that his company, FSL, sold authentic Coke products, Mr. Marullo consented to the Appellants supplying three of the Appellees with Coke, Diet Coke, 7-Up and an energy drink called Sin Maker.[1] Later the distribution agreement was expanded to cover all eight of the Appellees' locations.[2] A written agreement was never executed between the parties.

---

[1] The three Appellees the Appellants initially supplied beverages to were Fat Catz, Funky 544 and Industry Bar and Kitchen.

[2] The Appellants distributed beverages to these eight locations for the following time periods:

The beverage distribution agreement came to a halt in June 2014, however, after the Appellees learned the Appellants were actually distributing generic soda syrups to them.

Mr. Marullo initially alerted that the Appellants may have been distributing counterfeit soda products to the Appellees as a result of being contacted by David Richard in the spring of 2014. Mr. Richard's limited liability company, Nola Beverage Group, owned Sin Maker. He suspected that the Appellants were not distributing the genuine Sin Maker product to FSL customers. As mentioned above, the Appellees were Sin Maker-purchasers for their respective locations. Mr. Richard visited with Mr. Marullo at one of the Appellees' locations to taste the Sin Maker drink the Appellants had supplied. Upon tasting the drink, Mr. Richard confirmed the beverage was inauthentic and further observed counterfeit labels on the beverages-in-boxes (BIBs) on his product as well as the Coke products at the location. Through Mr. Richard, Mr. Marullo was put in contact with Special Agent Peter Orlando of the United Stated Food and Drug Administration ("FDA").

Special Agent Orlando later met with Messrs. Marullo and Richard at Funky 544. At this meeting, the men discovered the labeling on the BIBs to be counterfeit. They also tasted certain beverages and discovered the products had the incorrect flavor, not corresponding to their labels. Special Agent Orlando was given a sampling of BIBs, which the Appellants had supplied, for testing. He

1. Funky 544: January 2010 through June 2014
2. Fat Catz Music Club: January 2010 through June 2014
3. Industry Bar and Kitchen: January 2010 through June 2014
4. Balcony Music Club: April 2012 through June 2014
5. Old Opera House: November 2012 through June 2014
6. Famous Door: December 2012 through June 2014
7. Krazy Korner: May 2013 through June 2014
8/ Bourbon Bandstand: September 2013 through June 2014

3

subsequently informed Mr. Marullo that the tested products were counterfeit. Consequently, Mr. Marullo cancelled his distribution agreement with the Appellants in June 2014.

In late June 2014, the FDA executed a search warrant on the Appellants' warehouse, seizing all of its contents including counterfeit labels, mislabeled BIBs and drums of generic soda. Federal criminal charges were ultimately filed against Mr. Schiffman in United States District Court, Eastern District of Louisiana. On December 21, 2017, Mr. Schiffman pled guilty to the charge of "selling misbranded food." In his plea, he admitted to selling counterfeit beverages to FSL customers from 2012 through 2014. He further admitted to placing in FSL BIBs counterfeit drinks made from Al's Cola and Lemon UP, which are products of Al's Beverage Company of Connecticut.

The Appellees filed a Petition for Breach of Contract and for Damages on February 24, 2015, against the Appellants, raising claims for fraudulent inducement under the Louisiana Civ. Code arts. 1953 and 1958, and breach of contract as well as violations of La. Rev. Stat. 51:1401, *et seq*., known as LUTPA. The Appellants alleged purchasing approximately $155,093.83 worth of products from the Appellees and sought reimbursement of the same as well as attorney's fees.

Following a December 10, 2019 bench trial, the district court rendered judgment in favor of the Appellants, finding their claims against the Appellants under the Louisiana Civil Code and LUTPA had merit and awarding them $651,394.34 in damages plus interest and costs.[3] The award of damages represents

---

[3] Four witnesses testified at trial, two for each party: Mr. Schiffman and FSL employee Eva Manguno for the Appellants, and the deposition of Mr. Richard was introduced and Mr. Marullo

4

actual damages of $155,093.89, which the Court tripled in accordance with LUTPA, totaling $465,281.67, combined with attorney's fees of $186,112.67. Thereafter, the Court denied the Appellants' motion for new trial. This timely appeal followed.

## Assignments of Error

The Appellants raise six assignments of error:

> 1) Denying the Appellants' dilatory exceptions of vagueness and nonconformity, and their peremptory exceptions of no cause of action and no right of action;

> 2) Granting the Appellees' motion to compel and erroneously ordering Appellants to answer discovery that had previously been responded to sufficiently, and to pay fees and costs to counsel for the Appellees;

> 3) Denying the Appellants' motion for summary judgment;

> 4) Allowing into evidence during the trial on the merits details concerning Mr. Schiffman's criminal conviction beyond that permitted by Article 609 of the Louisiana Code of Evidence, and overruling the Appellants' timely objection thereto;

> 5) Denying the Appellants' motion for involuntary dismissal; and

> 6) Rendering judgment in favor of the Appellees and against Appellants on the merits of the case.

Despite raising the aforementioned assignments of error, the Appellants failed to brief assignments of error one, three and five. Pursuant to the Uniform Rules, Courts of Appeal, "[a]ll assignments of error and issues for review must be briefed. The court may consider as abandoned any assignment of error or issue for review which has not been briefed." Rule 2-12.4 (B)(4), Uniform Rules, Courts of

---

testified. The district court, Judge Kern Reese, noted that he only found the testimony of Messrs. Marullo and Richard to be credible.

Appeal. Deeming the un-briefed assignments of error as abandoned, we decline to consider these arguments.

The remaining three assignments of error focus on the district court's granting of a motion to compel and alleged errors made during the trial, which we address below. In reviewing these assignments of error, we apply a manifest error or abuse of discretion standard to the factual findings of the district court, while legal errors are reviewed *de novo*. The First Circuit in *Markerson v. Composite Architectural Design Sys., LLC*, 17-1252, p. 9 (La. App. 1 Cir. 7/10/18), 255 So.3d 1065, 1072–73, explains these differing standards of review:

> This state's appellate review standard, which is constitutionally based and jurisprudentially driven, is that a court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. *Stobart v. State through Dept, of Transp. and Development,* 617 So.2d 880, 882, n. 2 (La. 1993) Any legal issues are reviewed using the *de novo* standard of review, under which the trial court's legal conclusions are not entitled to deference. *TCC Contractors, Inc. v. Hospital Service Dist. No. 3 of Parish of Lafourche,* 2010-0685 (La. App. 1 Cir. 12/8/10), 52 So.3d 1103, 1108; *Gordon v. Gordon,* 2016-0008 (La. App. 4 Cir. 6/8/16), 195 So.3d 687, 689, *writ denied*, 2016-1282 (La. 10/28/16), 208 So.3d 886.

## Motion to Compel

The Appellants aver that the district court erred in granting the Appellees' motion to compel and ordering the Appellants to answer discovery that had previously been responded to sufficiently, and to pay fees and costs to counsel for Appellants.[4] The record reflects that in November 2018, the Appellees filed a

---

[4] A judgment granting a motion to compel is an interlocutory judgment, which is not generally appealable under La. Code Civ. Proc. arts. 1841 and 2083. Nevertheless, appellants are "entitled

motion to compel and for sanctions asserting they received insufficient and incomplete responses that were initially propounded in *May 2015*. In addition to the Appellants delaying their response to the point that a December 2018 trial date had to be continued, the Appellees further asserted that the Appellants' responses were incomplete.

"A party seeking to compel discovery bears the burden of proving that the matters sought to be discovered are relevant. In determining whether to compel discovery, the trial judge has vast discretion." *State ex. rel. Ieyoub v. Racetrac Petroleum, Inc.*, 01-458, p. 18 (La.App. 3 Cir. 6/20/01), 790 So.2d 673, 685. Moreover, absent a clear showing of abuse, a trial court's broad discretion in regulating pre-trial discovery will not be disturbed on appeal. *Moak v. Ill. Cent. R.R. Co.*, 93-783 (La. 1/14/94), 631 So.2d 401, 406. Thus, we review this matter for an abuse of discretion.

The record reflects that at a January 11, 2019 hearing on the motion, the district court noted seeing a pattern of evasive and "woefully insufficient" responses. Consequently, the Court granted the motion to compel and awarded $2,500 in attorneys' fees and $73 in costs. The district court, Judge Kern Reese, further read aloud at the hearing a series of discovery responses that were either objected to or that were responded to with "unknown at this time" by the Appellant, evidencing the Appellants pattern of providing nonresponsive answers. Based upon the foregoing, we cannot say that the district court abused its

---

to seek review of all adverse interlocutory judgments prejudicial to them, in addition to the review of the final judgment when an unrestricted appeal is taken." *Lavigne v. Allied Shipyard, Inc.*, 18-0066, p. 8 (La. App. 4 Cir. 1/15/20), 289 So.3d 1088, 1097 [internal citations omitted]. In the instant matter, the Appellants initially sought review of the motion to compel in case number 2019-CA-0446, which was dismissed on their own motion.

discretion in granting the motion to compel where there was a reasonable basis for determining the Appellees were being evasive.

Moreover, the district court's sanction award is in accord with La. Code Civ. Proc. art. 1471(C), entitled *Failure to comply with order compelling discovery; sanctions*, which provides

> In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

We further note that the district court is able to render any order that is just to address the failure of a party to provide or permit discovery. La. Code Civ. Proc. art. 1471(A). The district court did not abuse its discretion in ordering the Appellants to pay attorney's fees in consideration of the Appellants years-long delay in responding to discovery and failure to provide substantive responses to the same. This assignment of error is without merit.

**Admitting Evidence of Mr. Schiffman's Federal Criminal Conviction**

The Appellants' next assert that the district court erred in admitting evidence of Mr. Schiffman's federal criminal conviction at trial. We also find this assignment of error to be without merit because under the facts of this case such evidence is admissible pursuant to the Louisiana Code of Evidence.

Mr. Schiffman's December 2017 Factual Basis, which formed the basis for his guilty plea, was admitted into evidence at trial. As stated above, he pled guilty to one count of "sale of misbranded foods" and admitted to "engaging in the sale of misbranded food." The Factual Basis further reveals that when Special Agent

8

Orlando executed the aforementioned search warrant on FSL's warehouse in June 2014, Mr. Schiffman was present and confessed to selling FSL customers BIBs that were "falsely labeled" and filled with either generic cola or lemon-lime syrup from Al's Beverage Company in Connecticut in addition to other soda syrups he purchased from another company.

Additionally, Mr. Schiffman admitted to whiting-out expiration dates on counterfeit labels and using copies of said labels to tape onto BIBs that he "sold to customers as authentic products." Indeed the execution of the search warrant as notes above and as detailed in the Factual Basis reflects that counterfeit labels, generic soda drums and mislabeled BIBs were recovered from the warehouse during the seizure. Furthermore, Special Agent Orlando was able to corroborate Mr. Schiffman's fraud through the business records of other businesses, such as Al's Beverage Company. Pursuant to the Factual Basis, Mr. Schiffman consented to paying restitution to the three soda companies whose products he counterfeited.

In Louisiana, evidence of crimes that involve dishonesty or false statement are "admissible without requiring the court to weigh its prejudicial effect" under La. Code Evid. art. 609(A)(2). *Hebert v. Hartford Ins. Co. of the Midwest*, 94-316, p. 3 (La. App. 3 Cir. 11/2/94), 649 So.2d 631, 634. As stated above, the instant matter involves the Appellants' fraudulent inducement of the Appellees to enter into a beverage distribution agreement as well as the Appellants' deceit in selling purposely mislabeled counterfeit soda over four years.

Furthermore, as the Appellees note, La. Code Evid. art. 404(B)(1) allows "evidence of other crimes, wrongs, or acts to be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, . . . or when it relates to conduct that constitutes an

9

integral part of the act or transaction that is the subject of the present proceeding." In this matter, the district court could have reasonably determined that evidence of Mr. Schiffman's guilty plea evidenced intent, preparation, knowledge and/or an absence of a mistake in his dealings with the Appellees. Thus, we find this assignment of error to be without merit.

**Judgment on the Merits**

Lastly, the Appellants assert that the district court erred in ruling in favor of the Appellees at trial due to eight alleged errors the Court made pertaining to LUTPA, rescission of the beverage agreement, no cause of action, nonconformity of Coca Cola Products and Mr. Schiffman's personal liability.

**LUTPA**

The Appellants aver that the district court made three erroneous LUTPA rulings: ignoring the legal prerequisite to a private right of action under LUTPA that the plaintiff suffer an ascertainable loss of money or movable property; ignoring that as a legal prerequisite to the recovery of treble damages under LUTPA there must be the commission of an unfair trade practice after being put on notice of such by the secretary of state; and ignoring LUTPA's prescription provision.

A claim for unfair trade practices is governed by LUTPA, which declares as unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. 51:1405(A). LUTPA provides a means of recovery for "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by [Revised Statute] 51:1405." La. Rev. Stat. 51:1409(A).

"Only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA," which "does not provide an alternate remedy for simple breaches of contract." *Gandhi v. Sonal Furniture & Custom Draperies, L.L.C.*, 49,959, pp. 15-6 (La. App. 2 Cir. 7/15/15), 192 So.3d 783, 792.

The Appellants first assert that the Appellees did not establish they suffered an ascertainable loss as required by LUTPA. Louisiana Rev. Stat. 51:1409(A) provides:

> Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages.

It is uncontested in this matter that the Appellees paid the Appellants for over four years-worth of counterfeit beverages, a loss the district court calculated to be $155,093.89. The Appellees introduced invoice summaries and FSL invoice registers into evidence at trial, to substantiate their claims. Thus, the monetary loss of paying for non-conforming beverages was indeed ascertainable. Moreover, the district court rejected the Appellants' argument that the Appellees did not suffer a loss because the counterfeit beverages were sold to customers, which made the Appellees a profit. We find this argument to be meritless because the issue of whether the Appellees made a profit from third parties does not change the fact that the Appellants profited from defrauding the Appellees with nonconforming beverages for which they paid.

11

Regarding prescription, LUTPA claims are subject to a one-year delictual prescriptive period that runs from the time of the transaction or act which gave rise to the right of action. La. Rev. Stat. 51:1409(E); see also *2802 Mag. St., L.L.C. v. Eggspressions of N. Am., L.L.C.*, 19-0085, pp. 8-9 (La. App. 4 Cir. 5/22/19), 274 So.3d 1279, 1284-85. In the instant matter, Mr. Marullo received confirmation from the FDA in June 2014, that the Appellants sold him counterfeit beverages. The Appellees filed suit less than a year later in February 2015.

Moreover, the Appellants' counterfeit operation was continuous, originating with Mr. Schiffman's pre-agreement misrepresentations and lasting until Mr. Marullo terminated the parties' agreement in June 2014. We have previously explained how under unique factual circumstances the continuous tort doctrine applies to delay the running of prescription:

> 'The prescriptive period for delictual actions is one year, which commences to run from the day injury or damage is sustained. La. C.C. art. 3492. One of the exceptions to this rule is the jurisprudentially recognized doctrine of continuing tort.' *Risin v. D.N.C. Investments, L.L.C.*, 05-0415, p. 4 (La. App. 4 Cir. 12/7/05), 921 So.2d 133, 136. A continuing tort is '[w]here the cause of injury is a continuous one giving rise to successive damages.' *Id.* (citing *South Central Bell Telephone Co. v. Texaco Inc.*, 418 So.2d 531, 533 (La. 1982)). '[P]rescription does not begin to run until the conduct causing the damage is abated.' *Id.* Likewise, '[t]he scope of application of continuing tort is limited' as '[b]oth conduct and damage must be continuous.' *Id.*, 05-0415, p. 8, 921 So.2d at 138.

*Id.*, 19-0085, p. 6, 274 So.3d at 1283.

In the matter *sub judice*, the fraudulent conduct and the Appellees' damages were abated by default when Mr. Marullo terminated the parties' agreement. The Appellants' deceit was incessant and this served to delay the running of prescription under the continuous tort doctrine. The district court, therefore, did not

err in determining that the one year delictual prescription period had not run. This issue is without merit.

The Appellants additionally aver that treble damages are unwarranted here. The LUTPA statute that allows for the recovery of treble damages is La. Rev. Stat. 51:1409(A), providing in pertinent part:

> Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. If the court finds the unfair or deceptive method, act, or practice was knowingly used, *after being put on notice by the attorney general*, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney fees and costs.

The record reflects the Louisiana Attorney General's Office sent the Appellants a notice dated July 21, 2015, informing them that a LUTPA claim was filed against them and further to provide the Appellants the "opportunity to evaluate its position and if necessary to cease such activity." The notice concludes with the following statement:

> Having received this notice, should the same be found by a court of competent jurisdiction to constitute a violation of Louisiana Revised Statute 51:1401, et seq., the Unfair Trade Practices Ace and Consumer Protection Law, the petitioner in said suit will have fulfilled the notice requirement of La. R.S. 51:1409, and *may be entitled to treble damages under the statutes.* [Emphasis added].

The district court explained in its Reasons for Judgment that it awarded treble damages because successful plaintiffs in LUTPA actions are "entitled to 'three times the actual damages sustained,' as well as "reasonable attorney fees and costs" pursuant to La. Rev. Stat. 51:1409(A). However, as mentioned in both the

13

statute and the Louisiana Attorney General's letter, recovery for treble damages is limited to instances where defendants knowingly persist in employing the same unfair or deceptive method, act, or practice at issue in litigation against a plaintiff after the notice was issued. [5] A party who prevails under LUTPA is not automatically entitled to treble damages based on the plain wording of the statute, which is why the Attorney General's letter indicates that such an award is not definite. It is undisputed that the Appellants did not continue to sell and/or supply counterfeit beverages to the Appellees past June 2014.

The Appellees rely upon *AIM Business Capital L.L.C. v. Reach Out Disposal*, No. 13-241, 2014 WL 1401526, at *3 (W.D. La. Apr. 8, 2014), in support of their argument that they are entitled to treble damages. The Appellees assert that *AIM* is applicable and treble damages awardable because the "Appellants failed to repay Appellees the funds it had obtained from Appellees via fraudulent inducement, leaving Appellants unjustly enriched as part of the 'overall scheme,' " after receiving a July 2015 notice from the Louisiana Attorney General. However, in *AIM*, the defendants defrauded the plaintiffs through their manipulation and fabrication of invoices, which were sent to the plaintiffs. *Id.* The Western District in *AIM* determined that the defendant's "failure to honor" fraudulent invoices it had verified constituted part of the defendant's "overall scheme" and "hindered AIM's ability to investigate, leading to possible further damage." *Id.* Thus, arguably, the defendant's failure to repay the plaintiffs could be interpreted as a continuation of the same type of fraud. *See Thomas Indus. &*

---

[5] "The interpretation of a statute starts with the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature." *Louisiana Municipal Association v. State,* 04-0227, pp. 35-6 (La. 1/19/05) 893 So.2d 809, 836-37)(internal citations omitted) and citing La. Civ. Code. art. 9.

*Mech. Contractors, LLC v. Just*, No. CV 20-1102, 2020 WL 3429892, at *4 (E.D. La. June 23, 2020).

Moreover, in *McFadden v. Import One, Inc.*, 10-952 (La. App. 3 Cir. 2/9/11), 56 So.3d 1212, the Third Circuit determined that an award of treble damages was appropriate in a conversion lawsuit where the defendant retained the plaintiff's trade-in vehicle, after the Louisiana Attorney General had issued its notice, because the defendant was attempting to the force the plaintiff into a car sale at an interest rate that was higher than the parties agreed upon. *Id*., 10-952, pp. 14-5, 56 So.3d at 1222-23.

In the matter *sub judice*, the Appellants' overall scheme involved selling a counterfeit product for a profit. Sales ceased in June 2014, while the Appellants were still in possession of their ill-gotten profits. Does the fact that the Appellants had not returned the profits constitute a continuation of the scheme while a lawsuit is pending on the LUTPA claims and the amount of damages owed? Is every defendant sued under LUTPA automatically liable for treble damages if they fail to settle or attempt to settle a fraud claim prior to trial? We do not think so.

The plain language of La. Rev. Stat. 51:1409(A) requires the purposeful continuation of the "unfair or deceptive method, act, or practice" on a plaintiff, following receipt of the attorney general's notice. Under the facts of this case, we do not find that the Appellants engaged in any such methods, acts or practices after the notice was issued. More specifically, we find the Appellants decision not to repay the Appellees during the pendency of this matter does not meet the statutory requirement for recovery of treble damages. Because there is no evidence that the Appellants committed and/or continued to commit fraud after the attorney general's notice was issued, we reverse that portion of the district court's judgment

15

awarding the Appellees treble damages and affirm the district court's award of actual damages in the amount of $155,093.89.

Moreover, the reduction of the Appellees' award for damages necessitates that the award of attorneys' fees is proportionately decreased. The district court awarded the Appellees attorneys' fees in the amount of 40% of the total damages pursuant to the Louisiana Civil Code and LUTPA. Thus, we reduce the district court's award of $186,112.67 to 40% of $155,093.89, which is $62,037.55.

**Recission**

The Appellants aver the district court made two errors pertaining to recission: awarding the Appellees the return of the sales price without also requiring the return of the object of the sale or any of the other legal requirements for recission; and, relying on La. Civ. Code art. 1958, involving rescission of a contract, when no rescission was made in this matter.

In addressing the Appellants' arguments pertaining to recission of a contractual agreement, we recognize that in Louisiana "consent may be vitiated by error, fraud, or duress." La. Civ. Code art. 1948. Moreover, Louisiana Civil Code articles 1953 and 1958 are two interrelated articles pertaining to fraud located in Title IV of the Civil Code, entitled "Conventional Obligations or Contracts," Chapter 4, "Vices of Consent," Section Two. Article 1953, which defines fraud as a vice of contractual consent, provides:

> Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.

Moreover, "[a]s vitiation of consent is grounds for rescission, La. C.C. art. 1958 provides that '[t]he party against whom rescission is granted because of fraud is

liable for damages and attorney fees.' " *Stutts v. Melton*, 13-0557, p. 9 (La. 10/15/13), 130 So.3d 808, 814.

The district court determined the parties were operating under a beverage distribution agreement which the Appellees were fraudulently induced by the Appellants into entering. The Court explained in its Reasons for Judgment that evidence and testimony adduced at trial revealed that the Appellees consent to said agreement was vitiated by fraud, the Appellees were entitled to an award of attorney fees and actual damages representing the amount Appellees paid to Appellants for the counterfeit beverages because "restoration in kind is impossible given the consumable nature of the products involved."[6]

Pursuant to our *de novo* review, we do not find that the district court erred as the record reflects that the Appellants were bad faith obligors who used fraud to obtain the Appellees consent to enter into a beverage distribution agreement for authentic beverage products the Appellants knew they were unable to provide. A

---

[6] In its Reasons for Judgment, the district court additionally relied on the following jurisprudence and civil code articles in reasoning the Appellees were entitled to actual damages:

- "[t]he measure of damages in a breach of contract action depends upon whether the breach was in good faith or bad faith." *Brennan's, Inc.* v. *Colbert*, 2015-0325, p. 39 (La. App. 4 Cir. 4/13/16), 191 So.3d 1101, 1121;

- an obligor in bad faith is liable for all damages, foreseeable or not, that are a direct consequence of his failure to perform. La. Civ. Code art. 1997;

- upon dissolution of a contract, the parties shall be restored to the situation that existed before the contract was made. If restoration in kind is impossible or impracticable, the court may award damages. La. Civ. Code art. 2018.

Appellate courts review judgments, not reasons for judgment. *Wooley v. Lucksinger*, 09-0571, 09-0584, 09-0585, 09-0586, p. 77 (La. 4/1/11), 61 So.3d 507, 572 (quoting *Bellard v. American Cent. Ins. Co.*, 2007-1335, p. 25 (La. 4/18/08), 980 So.2d 654, 671). Nevertheless, appellate courts may review the district court's reasons for judgment to gain insight into the judgment. *Id.*, 09-0571, 09-0584, 09-0585, 09-0586, p. 78, 61 So.3d at 572.

return in kind of the beverages was impossible under the facts of this case; thus, ordering the Appellants to return the purchase price to the Appellees for the nonconforming beverages was the only option left to restore the Appellees to a situation that existed pre-agreement under La. Civ. Code art. 2018. This assignment of error is without merit.

**No Cause of Action Exists without Actual Damage, Loss or Injury**

The Appellants additionally assert that the district court erred in ignoring basic legal principles establishing that no cause of action exists without the existence of actual damage, loss or injury. We pretermit discussion of this assignment of error as we have discussed above that the Appellees award of damages under LUTPA and as well as for breach of contract and fraud were valid as their collective loss in this matter was the purchase price paid for the nonconforming beverages. The district court was legally correct in determining that the law provides a remedy for the causes of action raised by the Appellees in this matter.

**Nonconformity of Coca Cola Products**

The Appellants assert the district court erred in finding that all of the Coca Cola products sold by the Appellants to the Appellee were nonconforming even though there was no evidence whatsoever to support that conclusion. Considering the testimony of Mr. Schiffman, and the evidence introduced at trial, including Mr. Schiffman's guilty plea and the list of items seized from the Appellants' warehouse, we find this argument to be disingenuous.

Mr. Schiffman testified that FSL was not a licensed distributor of Coke products. Additionally, only generic soda syrups were seized at the Appellants' warehouse, further evidencing that the authentic beverages the Appellees

negotiated for were not being supplied.  We find this assignment of error to be without merit.

**Personal Liability of Mr. Schiffman**

Lastly, the Appellants aver the district court erred in ignoring basic principles of corporate law establishing that a corporation is a separate and distinct legal entity from its shareholders and that absent special circumstances a shareholder is not liable for the legal liability of the corporation.

When individual member(s) of a juridical entity mismanage the entity or "otherwise thwart the public policies justifying treating the entity as a separate juridical person," the individual member(s) have been subjected to personal liability for obligations for which the juridical entity would otherwise be solely liable, in narrowly defined circumstances. *Ogea v. Merritt*, 13-1085, p. 6 (La. 12/10/13), 130 So.3d 888, 895.  When individual member(s) are held liable under such circumstances, it is said that the court is "piercing the corporate veil." *Id.* (citing *Charming Charlie, Inc. v. Perkins Rowe Associates, L.L.C.,* 11-2254, p. 6 (La.App. 1 Cir. 7/10/12), 97 So.3d 595, 598).

The Louisiana Supreme Court has held that the corporate veil may be pierced in instances "where a corporation is simply the "alter ego" of the shareholder." *Andretti Sports Mktg. Louisiana, LLC v. Nola Motorsports Host Comm., Inc.,* 147 F. Supp. 3d 537, 561-62 (E.D. La. 2015).  This doctrine has been applied in "situations where fraud or deceit has been practiced by the shareholder acting through the corporation." *Id.*

Mr. Schiffman's fraudulent and deceitful actions are fully writhed throughout the facts of this matter. He personally lured Mr. Marullo into contracting with FSL, knowing it did not sell the products Mr. Marullo specifically

requested. Mr. Schiffman proceeded to stay silent for four and half years as his company sold and supplied the Appellees with nonconforming beverage products. Moreover, he testified during his April 4, 2019 deposition, that he was the only person behind this scheme while he employed others at the FSL warehouse to carry on the manual work required to maintain the fraud, such as mislabeling BIBs to appear as though they are the genuine beverages the Appellees and other customers ordered. Thus, under the facts of this matter, we find that the district court did not err in finding Mr. Schiffman personally liable.

## DECREE

For the foregoing reasons, we affirm that portion of the May 26, 2020 judgment awarding the Appellees actual damages in the amount of $155,093.89. However, we reverse the award of treble damages under LUTPA as well as the award of attorneys' fees, which is reduced to $62,037.55. Lastly, the January 24, 2019 judgment of the district court, granting the Appellees' motion to compel, is also affirmed.

**AFFIRMED IN PART; REVERSED IN PART AND RENDERED**